**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                                       :

In re                                  :       Chapter 11
                                         :

HUDSON 888 OWNER LLC and        :       Case No. 24-10021 (MEW)
HUDSON 888 HOLDCO LLC,          :
                                        :      (Jointly Administered)

        Debtors.[1]               :
                                         :
-------------------------------------------------------- X

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THIRD AMENDED PLAN OF REORGANIZATION

**WHEREAS,** on April 12, 2024, Hudson 888 Owner LLC ("**Fee Owner**") and Hudson 888 Holdco LLC ("**Holdco**" and, together with Fee Owner, the "**Debtors**"), the debtors and debtors in possession in the above-captioned jointly-administered chapter 11 cases (the "**Chapter 11 Cases**"), filed their original *Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* [Docket No. 125], along with the corresponding *Disclosure Statement for Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* [Docket No. 124];

**WHEREAS,** on April 25, 2024, the Debtors filed an amended original *Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* [Docket No. 135] (the "**Original Plan**") to incorporate certain comments of the Court made at a status conference on April 25, 2024, as well as certain ministerial edits, along with the corresponding amended *Disclosure Statement for Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* [Docket No. 134] (the "**Original Disclosure Statement**");

---

[1]    The Debtors' principal offices are located at 150 East 52nd Street, Suite 8002, New York, New York 10022. The last four digits of the Federal Tax Id. No. of Hudson 888 Owner LLC are 6993. The last four digits of the Federal Tax Id. No. of Hudson 888 Holdco LLC are 4666.

**WHEREAS,** on April 23, 2024, the Debtors filed the *Motion for an Order: (A) Approving the Disclosure Statement; (B) Approving Solicitation, Voting, and Tabulation Procedures and the Form of Ballots and Notices in Connection Therewith; (C) Scheduling a Confirmation Hearing; (D) Establishing Procedures for Filing Confirmation Objections; (E) Approving Form and Manner of Notice of Confirmation Hearing; and (F) Granting Related Relief* (the "**Solicitation Procedures Motion**") [Docket No. 129];

**WHEREAS**, on April 29, 2024, after due and proper notice and a hearing, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an Order granting the Solicitation Procedures Motion [Docket No. 138] (the "**Solicitation Procedures Order**"), which, among other things: (i) conditionally approved the Original Disclosure Statement; (ii) established solicitation and voting procedures; and (iii) established notice and objection procedures in respect of confirmation of the Original Plan, including the form and method of notice of the hearing to consider confirmation of the Original Plan (the "**Confirmation Hearing**"), which may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court and/or by a notice of adjournment filed with the Court;

**WHEREAS**, pursuant to the Solicitation Procedures Order, the Court set a voting deadline for the Original Plan of May 31, 2024 at 5:00 p.m. (Eastern Time) (the "**Voting Deadline**") and a confirmation hearing date of June 11, 2024 at 2:00 p.m. (as adjourned and re-set, the "**Confirmation Hearing Date**"), which hearing date was adjourned to June 20, 2024 [Docket No. 182] and then to July 2, 2024 [Docket No. 190];

2

WHEREAS, on May 2, 2024, the Debtors served the Solicitation Package[2] in accordance with the Solicitation Procedures Order (the "**Solicitation Package Affidavit of Service**") [Docket No. 145];

WHEREAS, on May 31, 2024, the New York City Department of Finance filed *The New York City Department of Finance's Objection Debtors' Chapter 11 Plan of Reorganization* [Docket 181], objecting to the Original Plan.

WHEREAS, on June 13, 2024, the Debtors filed the *Declaration of Robert D. Gordon Regarding Solicitation of Votes and Tabulation of Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* [Docket No. 188] (the "**First Voting Declaration**"), which disclosed, among other things, that the holders of Claims in impaired Class 4 (General Unsecured Claims) voted in favor of the Original Plan;

WHEREAS, on June 18, 2024, the Debtors filed the *Amended Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* (the "**Amended Plan**") [Docket No. 197], along with the corresponding *Amended Disclosure Statement for Amended Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* (the "**Amended Disclosure Statement**") [Docket No. 196];

WHEREAS, on June 20, 2024, at the direction of the Court, the Debtors served holders of Claims in Class 1 (Senior Secured Claims), Class 2 (Mezzanine Secured Claims), and Class 3 (Mezzanine Deficiency Claim) an applicable Ballot to vote on the Amended Plan;

WHEREAS, on June 27, 2024, the Secured Creditors filed the *Lenders' Objection to Confirmation of the Amended Chapter 11 Plan of Reorganization of Debtors and Approval of the*

---

[2]     Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Third Amended Plan (as defined below) or the Solicitation Procedures Order, as applicable.

*Amended Disclosure Statement* [Docket No. 207] objecting to approval of the Amended Disclosure

Statement and confirmation of the Amended Plan.

**WHEREAS**, on July 1, 2024, the Debtors filed the *Second Amended Chapter 11 Plan of*

*Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* (the "**Second Amended**

**Plan**") [Docket No. 213], along with the corresponding *Second Amended Disclosure Statement for*

*Amended Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco*

*LLC* [Docket No. 213], which, among other things, addressed certain concerns raised at the status

conference held by the Court on June 20, 2024, and incorporated proceeds from the June 28, 2024

closing of the Malaysia Sale (as defined in the Second Amended Plan);

**WHEREAS**, on July 1, 2024, the Debtors also filed the *Declaration of Robert D. Gordon*

*Regarding Solicitation of Votes and Tabulation of Amended Chapter 11 Plan of Reorganization of*

*Hudson 888 Owner LLC and Hudson 888 Holdco LLC for Classes 1, 2, and 3* (the "**Second Voting**

**Declaration**") [Docket No. 216], which disclosed, among other things, that the holders of Claims

in impaired Classes 1, 2, and 3 (collectively, the "**Rejecting Classes**") voted to reject the Amended

Plan;

**WHEREAS,** the Confirmation Hearing with respect to the Second Amended Plan was

scheduled to proceed on July 2, 2024. However, prior to the Confirmation Hearing, the Debtors

and the Secured Creditors (i.e., the holders of the Claims in the Rejecting Classes) reached a

tentative settlement of their disputes and agreed to, among other things, adjourn the Confirmation

Hearing pending the parties' continued settlement negotiations;

**WHEREAS,** the Debtors and the Secured Creditors thereafter engaged in good-faith

arm's-length negotiations to resolve their disputes and achieve a consensual Plan;

4

**WHEREAS**, on September 18, 2024, the Debtors filed the *Third Amended Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* (the "**Third Amended Plan**") [Docket No.256], along with the corresponding *Third Amended Disclosure Statement for Amended Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC* (the "**Third Amended Disclosure Statement**") [Docket No.255], reflecting the settlement of disputes between the Debtors and the Secured Creditors and a consensual plan of reorganization;

**WHEREAS,** on September 18, 2024, the Debtors also filed the *Debtors' Motion for Entry of an Order Scheduling Expedited Confirmation Hearing with Respect to Debtors' Third Amended Chapter 11 Plan of Reorganization* (the "**Confirmation Hearing Motion**") seeking to set the new Confirmation Hearing date for September 24, 2024 [Docket No.257];

**WHEREAS,** on September 20, 2024, the Court entered an order granting the Confirmation Hearing Motion [Docket No. 258] and scheduling the Confirmation Hearing with respect to the Third Amended Plan for September 24, 2024, at 11:00 a.m.;

**WHEREAS**, on September 23, 2024, the Debtors filed the *Declaration of Robert D. Gordon Regarding Tabulation of Votes Regarding Third Amended Chapter 11 Plan of Reorganization of Hudson 888 Owner LLC and Hudson 888 Holdco LLC for Classes 1, 2, 3, and 5* (the "**Second Voting Declaration**" and together with the First Voting Declaration, the "**Voting Declaration**") [Docket No. 260], which disclosed, among other things, that the holders of Claims in impaired Classes 1, 2, and 3 and of Interests in impaired Class 5 voted to accept the Third Amended Plan, resulting in all impaired Classes of Claims and Interests having voted in favor of the Original Plan or the Third Amended Plan, as applicable (for voting purposes only, the "**Plan**");

**NOW, THEREFORE**, based on the record of the Confirmation Hearing, including all the evidence proffered or adduced, and the arguments of counsel made at the Confirmation Hearing, and the entire record of the Chapter 11 Cases; and after due deliberation thereon and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings of Fact and Conclusions of Law</u>. The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Exclusive Jurisdiction; Venue; Core Proceeding – 28 U.S.C. §§ 157(b)(2), 1334(a)</u>. The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). Venue is proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Third Amended Plan and the Third Amended Disclosure Statement comply with the applicable provisions of the Bankruptcy Code and should be confirmed and approved, respectively.

C.      <u>Chapter 11 Petitions</u>. On January 7, 2024 (the "**Petition Date**"), each Debtor commenced the Chapter 11 Cases. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

6

1108 of the Bankruptcy Code. No trustee or examiner has been appointed. The Chapter 11 Cases

are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

D.    <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11

Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without

limitation, all pleadings and other documents filed, all orders entered, and the evidence and

arguments made, proffered, or adduced at the hearings held before the Court during the pendency

of the Chapter 11 Cases, including, but not limited to, the hearing to consider the adequacy of the

Disclosure Statement.

E.    <u>Burden of Proof</u>. The Debtors have satisfied their burden of proving by a

preponderance of the evidence that the Plan satisfies the requirements of section 1129(a). As of

the Confirmation Hearing, there are no impaired classes of Claims or Interests that have not

accepted the Plan. Therefore, section 1129(b) of the Bankruptcy Code is inapplicable to

confirmation of the Third Amended Plan.

F.    <u>Original Disclosure Statement and Third Amended Disclosure Statement</u>. The

treatment of Class 4 Claims under the Original Plan and the Third Amended Plan is substantially

the same.

1.    The Original Plan proposed payments to each holder of a Class 4 Claim as follows:

(i) Cash equal to 50% of the Allowed amount of such Claim on the later of (a) the

Closing Date (as defined therein) and (b) the date that is the first Business Day

after the date that is thirty (30) calendar days after the date such Claim becomes

an Allowed Claim; and (ii) Cash equal to the remaining 50% of the Allowed

amount of such Claim on or before the later of (y) the last Business Day of the

fifth full calendar month following the Closing Date and (z) the first Business Day

after the date that is thirty (30) calendar days after the date such Claim becomes an Allowed Claim.

2. The Third Amended Plan proposes payments to each holder of a Class 4 Claim as follows: (i) Cash equal to 50% of the Allowed amount of such Claim on the later of (a) thirty (30) days after the Effective Date and (b) the date that is the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes an Allowed Claim and (ii) Cash equal to the remaining 50% of the Allowed amount of such Claim on or before December 31, 2024.

Under the Original Plan, the Closing Date was not likely to occur before July 2024, so the second installment payment to holders of Class 4 Claims would likely have been on or about the same date as provided for in the Third Amended Plan (*i.e.*, December 31, 2024). Moreover, both the Original Plan as described by the Original Disclosure Statement and the Third Amended Plan as described by the Third Amended Disclosure Statement contemplate payment of the Secured Creditor Claims in full, with interest (the two plans simply propose different means for achieving such payment in full with interest). As such, the Original Disclosure Statement adequately discloses to the holders of Class 4 Claims their treatment and their treatment relative to other Classes of Claims, whether with reference to the Original Plan or the Third Amended Plan. Therefore, re-solicitation under section 1125 of the Bankruptcy Code or re-balloting under section 1126 of the Bankruptcy Code of holders of Class 4 Claims with respect to the Third Amended Plan is unnecessary. Accordingly, the Original Disclosure Statement, as applicable to the holders of Class 4 Claims, and the Third Amended Disclosure Statement, as applicable to the holders of Class 1, 2, and 3 Claims and Class 5 Interests, shall hereafter be referred to collectively where appropriate as the "**Disclosure Statement**," and, as stated above, for purposes of voting, the

Original Plan, as applicable to holders of Class 4 Claims, and Third Amended Plan, as applicable to the holders of Class 1, 2 and 3 Claims and Class 5 Interests, shall hereafter be referred to collectively where appropriate as the "**Plan**."

G.    Disclosure Statement; Adequate Information. The Disclosure Statement satisfies section 1125 of the Bankruptcy Code because it contains "adequate information" to allow holders of Claims to make informed decisions about whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information" including:

1. **Summary of the Plan's Treatment of Claims and Interests:** A plain English summary of the salient terms of the Plan with respect to the treatment of Claims and Interests, including the property each class of interests is expected to receive under the Plan, which is set forth in Article IV of the Disclosure Statement;

2. **The Debtors' Business Operations:** An overview of the Fee Owner's business operations, prepetition ownership structure, and property, which is set forth in Article II.A of the Disclosure Statement;

3. **Events Leading to the Chapter 11 Cases:** A summary of events leading to the Chapter 11 Cases, which is set forth in Article II.C of the Disclosure Statement;

4. **Key Events of the Chapter 11 Cases:** A summary of key events during the Chapter 11 Cases, which is set forth in Article III of the Disclosure Statement;

5. **Liquidation Analysis:** A liquidation analysis, which is set forth in Article VIII.B of the Disclosure Statement;

6. **Risk Factors:** Certain risks associated with the Plan not being confirmed, which are described in Article VI of the Disclosure Statement;

7. **Notice of the Injunction, Release, and Exculpation Provisions of the Plan:** A description of the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, which are described in Article IV.I of the Disclosure Statement;

8. **Voting Procedures:** A description of the procedures for voting on the Plan, which are described in Article VII of the Disclosure Statement;

9. **Confirmation of the Plan:** Confirmation procedures and statutory requirements for confirmation and consummation of the Plan, which are set forth in Article VIII of the Disclosure Statement;

10. **Certain United States Federal Tax Consequences of the Plan:** A description of certain U.S. federal income tax consequences to the Debtors and a hypothetical investor typical of the holders of Claims in the Debtors' estate, which are described in Article V of the Disclosure Statement; and

11. **Recommendation of the Debtors:** A recommendation by the Debtors that holders of Claims and Interests in the Classes should vote to accept the Plan, stated in Article X of the Disclosure Statement.

H.      Accordingly, the Disclosure Statement satisfies section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to holders of Claims and Interests entitled to vote to accept or reject the Plan.

I.      <u>Transmittal and Mailing of Materials; Notice</u>. As evidenced by the Solicitation Package Affidavit of Service, the transmittal and service of the Solicitation Package were adequate under the circumstances, and all parties required to be given notice of the original Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Original Plan) were given due, proper, timely, and adequate notice in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), and applicable nonbankruptcy law, and such parties each had an opportunity to appear and be heard with respect thereto. Notice of the adjourned and re-scheduled Confirmation Hearing dates was provided through the docket in accordance with the Solicitation Procedures Order. No other or further notice is required.

J.      <u>Voting</u>. The procedures by which the Ballots for acceptance or rejection of the Original Plan and for making related elections were distributed and tabulated were fair, properly

10

conducted, and complied with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

K.    <u>Bankruptcy Rule 3016</u>. The Plan and all modifications thereto are dated and identify the entities submitting them, satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, satisfying Bankruptcy Rule 3016(b). The injunction provisions and the related provisions in the Disclosure Statement describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction provisions, thereby satisfying Bankruptcy Rule 3016(c).

L.    <u>Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1)</u>. The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.    <u>Proper Classification – 11 U.S.C. §§ 1122, 1123(a)(1)</u>. In addition to Administrative Claims, Fee Claims, and Priority Tax Claims, which need not be classified, the Third Amended Plan designates the following five Classes of Claims and Interests: Class 1 (Senior Secured Claim), Class 2 (Mezzanine Secured Claim), Class 3 (Mezzanine Deficiency Claim), Class 4 (General Unsecured Claims), and Class 5 (Interests). The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such classification does not unfairly discriminate between holders of Claims and Interests. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      <u>Specified Treatment of Unimpaired Classes – 11 U.S.C. § 1123(a)(2)</u>. Section 1123(a)(2) of the Bankruptcy Code is inapplicable because all Classes are impaired and entitled to vote under the Third Amended Plan.

3.      <u>Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3)</u>. Article III of the Third Amended Plan designates Class 1 (Senior Secured Claim), Class 2 (Mezzanine Secured Claim), Class 3 (Mezzanine Deficiency Claim, if any), Class 4 (General Unsecured Claims), and Class 5 (Interests) as Impaired, and Article IV of the Plan specifies the treatment of Claims and Interests in such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code. The following chart represents the Classes of Claims or Interests under the Third Amended Plan:

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Senior Secured Claim | Impaired | Yes |
| 2 | Mezzanine Secured Claim | Impaired | Yes |
| 3 | Mezzanine Deficiency Claim | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Interests | Impaired | Yes |

4.      <u>No Discrimination – 11 U.S.C. § 1123(a)(4)</u>. The Third Amended Plan provides for the same rights and treatment by the Debtors of each Claim or Interest in each respective Class or subclass unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5.      <u>Implementation of Plan – 11 U.S.C. § 1123(a)(5)</u>. The Third Amended Plan and the various documents and agreements referred to therein and the exhibits to the Third Amended Plan provide adequate and proper means for the Third Amended Plan's implementation

12

(thereby satisfying section 1123(a)(5) of the Bankruptcy Code) through, among other things: (a) the Residential Unit Transfer; (b) the payment of the Balance of Payoff Amount to the Secured Creditors or the Retail Unit Transfer within the Retail Closing Period; (c) provisions for the management of the Project and payment of operating expenses during the Retail Closing Period; (d) provisions for the payment of U.S. Trustee fees accruing to and from/after the Effective Date of the Third Amended Plan; and (e) the proper application of section 1146(a) of the Bankruptcy Code to transactions and transfers of property under the Third Amended Plan. *See* Third Amended Plan, §§ 5.1, 12.4.

6.    <u>Nonvoting Equity Securities – 11 U.S.C. § 1123(a)(6)</u>. Section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Third Amended Plan because the Debtors are limited liability companies and do not have a corporate charter. The Debtors' organizational documents will continue in full force following confirmation and the Effective Date of the Third Amended Plan. Moreover, the Third Amended Plan does not contemplate the issuance of any equity securities.

7.    <u>Designation of Directors and Officers – 11 U.S.C. § 1123(a)(7)</u>. Pursuant to section 12.6 of the Third Amended Plan, the reorganized Debtors shall have the same officer(s) as the Debtors. Specifically, Sheng Zhang shall continue to serve as Chairman and Chief Executive Officer of each of the Debtors on and after the Effective Date. This is consistent with the interests of creditors and with public policy and, therefore, satisfies section 1123(a)(7) of the Bankruptcy Code.

8.    <u>Impairment/Unimpairment of Classes of Claims and Equity Interests – 11 U.S.C. § 1123(b)(1)</u>. As contemplated by section 1123(b)(1) of the Bankruptcy Code, Class 1 (Senior Secured Claim), Class 2 (Mezzanine Secured Claim), Class 3 (Mezzanine Deficiency

13

Claim, if any), Class 4 (General Unsecured Claims), and Class 5 (Interests) are Impaired under the Third Amended Plan.

9.      <u>Assumption and Rejection of Executory Contracts and Unexpired Leases – 11 U.S.C. § 1123(b)(2)</u>. Section 8.1 of the Third Amended Plan provides, among other things, means for the assumption and assignment or the rejection of executory contracts and unexpired leases (a) in effect as of the date of the Residential Unit Transfer that pertain solely to the operation and management of the Residential Units and/or the common areas and (b) in effect as of the expiration of the Retail Closing Period that pertain to the Retail Units. The Debtors have exercised reasonable business judgment in providing for the assumption, assumption and assignment, or the rejection, as the case may be, of their executory contracts and unexpired leases under the terms of the Third Amended Plan, and such assumption, assumption and assignment, or rejection, as applicable, satisfies the requirements of section 365(b) of the Bankruptcy Code and is appropriate under section 1123(b)(2) of the Bankruptcy Code.

10.      <u>Settlement of Claims and Causes of Action – 11 U.S.C. § 1123(b)(3)(A)</u>. In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, and in consideration for the distributions and other benefits provided under the Third Amended Plan, the provisions of the Third Amended Plan constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all holders of Claims or Interests may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest, and the compromise and settlement of such Claims and Interests embodied in the Third Amended Plan are in the best interests of the Debtors, the Estates, and all holders of Claims and Interests, and are fair, equitable, and reasonable.

11.    <u>Retention of Claims and Interests – Section 1123(b)(3)(B)</u>. In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, section 10.8 of the Third Amended Plan provides that the Debtors shall retain, pursue or abandon in their sole discretion, any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of their Estates in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. The Debtors expressly reserve all rights to prosecute any Causes of Action, except as otherwise expressly released in the Third Amended Plan. All Causes of Action are expressly preserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Causes of Action prosecuted upon, after, or as a consequence of entry of this Confirmation Order and occurrence of the Effective Date.

12.    <u>Sale of all or substantially all of the property of the Estates – 11 U.S.C. § 1123(b)(4)</u>. Section 1123(b)(4) of the Bankruptcy Code may or may not be applicable, depending on whether (a) both the Residential Unit Transfer and the Retail Unit Transfer occur; and (b) the release of the Secured Creditors' collateral by virtue of these transactions is deemed a "sale". To the extent the Third Amended Plan provides for the potential sale of all or substantially all of the Debtors' assets to the Secured Creditors, such transaction is adequately disclosed in the Third Amended Plan, and thus section 1123(b)(4) of the Bankruptcy Code is satisfied.

13.    <u>Modification of Rights – 11 U.S.C. § 1123(b)(5)</u>. To the extent that the Third Amended Plan modifies the rights of holders of Claims in Class 1 (Senior Secured Claim), Class 2 (Mezzanine Secured Claim), Class 3 (Mezzanine Deficiency Claim, if any), Class 4

(General Unsecured Claims), and Class 5 (Interests), it does not do so improperly and thus complies with section 1123(b)(5) of the Bankruptcy Code.

14.     <u>Additional Plan Provisions – 11 U.S.C. § 1123(b)(6)</u>. The provisions of the Third Amended Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for: (1) distributions to holders of Claims and Interests; (2) resolution of Disputed Claims and Interests; (3) allowance of certain Claims; (4) releases by the Debtors of certain parties; (5) releases by certain third parties; (6) exculpation of certain parties; (7) the injunction of certain Claims and Causes of Action in order to implement the discharge, release, and exculpation provisions; and (8) retention of this Court's jurisdiction, thereby satisfying the requirements of sections 1123(b)(5) and (6) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

15.     <u>Debtors Are Not Individuals – 11 U.S.C. § 1123(c)</u>. The Debtors are not individuals and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

M.     <u>Debtors' Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(2)</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

1.     The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Third Amended Plan under section 1121(a) of the Bankruptcy Code; and

2.     The Debtors have complied with applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable

non-bankruptcy law, rule, and regulation, and all other applicable law, in transmitting the
Solicitation Packages and related documents and notices, and in soliciting and tabulating the votes
on the Plan.

N.    <u>Plan Proposed in Good Faith – 11 U.S.C. § 1129(a)(3)</u>. The Debtors have proposed
the Third Amended Plan (and all other agreements, documents, and instruments necessary to
effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section
1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record
of the Chapter 11 Cases, the Disclosure Statement and the hearings thereon, and the record of the
Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Third Amended
Plan and other agreements and documents contemplated thereby are based upon extensive, arms'
length negotiations between and among representatives of the Debtors and the Secured Creditors.
The Third Amended Plan was proposed with the legitimate and honest purpose of maximizing the
value of the Debtors' estates and effectuating a successful reorganization of the Debtors. Further,
the Third Amended Plan's classification, indemnification, exculpation, release, settlement, and
injunction provisions have been negotiated in good faith and at arms' length, consistent with
sections 105, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code.

O.    <u>Payments for Services or Costs and Expenses – 11 U.S.C. § 1129(a)(4)</u>. Any
payment made or to be made by any of the Debtors for services or for costs and expenses incurred
prior to the Effective Date in connection with the Chapter 11 Cases, or in connection with the
Third Amended Plan and incidental to the Chapter 11 Cases has been approved by, or is subject to
the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy
Code.

P.      <u>Additional Disclosures - 11 U.S.C. § 1129(a)(5)</u>. The Third Amended Plan satisfies

section 1129(a)(5) of the Bankruptcy Code by way of the disclosures described in section L.7

above.

Q.      <u>No Rate Changes – 11 U.S.C. § 1129(a)(6)</u>. The Third Amended Plan does not

provide for rate changes by any of the Debtors subject to the jurisdiction of any governmental

regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

R.      <u>Best Interests of Creditors – 11 U.S.C. § 1129(a)(7)</u>. The Third Amended Plan

satisfies section 1129(a)(7) of the Bankruptcy Code. The Third Amended Disclosure Statement,

the Voting Declaration, and the other evidence proffered or adduced at the Confirmation Hearing:

(i) are reasonable, persuasive, and credible; (ii) provide a reasonable estimate of the liquidation

values of the Debtors upon hypothetical conversion to cases under chapter 7 of the Bankruptcy

Code; (iii) have not been controverted by other evidence; and (iv) establish that each holder of an

Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on

account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than

the amount such holder would receive or retain if the Debtors were liquidated under chapter 7 of

the Bankruptcy Code on such date.

S.      <u>Acceptance by Each Class – 11 U.S.C. § 1129(a)(8)</u>. As of the Confirmation

Hearing, each of the five Classes of Claims and Interests has voted to accept the Plan.

T.      <u>Treatment of Administrative Claims, Priority Tax Claims, and Other Priority</u>

<u>Claims – 11 U.S.C. § 1129(a)(9)</u>. The treatment of Administrative Claims, Fee Claims, and Priority

Tax Claims pursuant to sections 2.1, 2.2, and 2.3 of the Third Amended Plan, respectively, satisfies

the requirements of sections 1129(a)(9)(A), (C), and (D) of the Bankruptcy Code, as applicable.

U.      <u>Acceptance by Impaired Classes – 11 U.S.C. § 1129(a)(10)</u>. Each of impaired

classes Class 1 (Senior Secured Claim), Class 2 (Mezzanine Secured Claim), Class 3 (Mezzanine

Deficiency Claim, if any), and Class 4 (General Unsecured Claims) has voted to accept the Plan

by the requisite majorities, determined without including any acceptance of the Plan by any insider

(as that term is defined in section 101(31) of the Bankruptcy Code), thereby satisfying the

requirements of section 1129(a)(10) of the Bankruptcy Code.

V.      <u>Feasibility – 11 U.S.C. § 1129(a)(11)</u>. The Third Amended Disclosure Statement

and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and

credible, (ii) have not been controverted by other evidence, and (iii) establish that the Third

Amended Plan is feasible and that confirmation of the Plan is not likely to be followed by the

liquidation or the need for further financial reorganization of the Debtors, thereby satisfying the

requirements of section 1129(a)(11) of the Bankruptcy Code.

W.      <u>Payment of Statutory Fees – 11 U.S.C. § 1129(a)(12)</u>. Pursuant to section 12.1 of

the Third Amended Plan, all fees payable as of the Effective Date under section 1930 of chapter

123 of title 28 of the United States Code will be paid on the Effective Date, and thereafter as may

be required. For the avoidance of doubt, because the Residential Unit Transfer is a cashless

transaction that involves a release of collateral to the Secured Creditors, under the specific facts

and circumstances of this case and the Third Amended Plan, the Residential Unit Transfer does

not give rise to a U.S. Trustee fee under 28 U.S.C. § 1930(a)(6). Thus, the Plan satisfies the

requirements of section 1129(a)(12) of the Bankruptcy Code.

X.      <u>Inapplicable Provisions – 11 U.S.C. § 1129(a)(13)-(16)</u>. Bankruptcy Code sections

1129(a)(13)-(16) are inapplicable as the Debtors: (i) do not provide "retiree benefits" as defined

in section 1114 of the Bankruptcy Code (§ 1129(a)(13)); (ii) do not have domestic support

19

obligations (§ 1129(a)(14)); (iii) are not individuals (§ 1129(a)(15)); and (iv) are not non-profit entities (*see* § 1129(a)(16)).

Y.    Fair and Equitable; No Unfair Discrimination – 11 U.S.C. § 1129(b). As of the Confirmation Hearing, there are no impaired classes of Claims or Interests that have not accepted the Plan. Therefore, section 1129(b) of the Bankruptcy Code is inapplicable to confirmation of the Third Amended Plan.

Z.    Only One Plan – 11 U.S.C. § 1129(c). Because the Third Amended Plan is the only chapter 11 plan filed and pending in the Chapter 11 Cases, the Third Amended Plan satisfies section 1129(c) of the Bankruptcy Code.

AA.    Principal Purpose of the Plan – 11 U.S.C. § 1129(d). Because the principal purpose of the Third Amended Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, the Third Amended Plan satisfies section 1129(d) of the Bankruptcy Code.

BB.    Small Business Case – 11 U.S.C. § 1129(e). The Chapter 11 Cases are not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

CC.    Good Faith Solicitation – 11 U.S.C. § 1125(e). Based on the record before the Court in the Chapter 11 Cases, the Debtors and their directors, officers, employees, members, agents, advisors, and professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Order in connection with all their respective activities relating to the solicitation of acceptances or rejections of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled

to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.7 of the Third Amended Plan.

## **Other Findings**

DD.    <u>Injunction, Exculpation, and Releases</u>. The Court has jurisdiction under sections 1334(a) and (b) of the United States Code to approve the injunctions or stays, injunction against interference with the Third Amended Plan, releases, and exculpation set forth in the Third Amended Plan, including those set forth in Article X of the Third Amended Plan. The releases of claims by the Debtors under section 10.6 of the Third Amended Plan are reasonable in scope and no objections have been filed. The exculpation provisions in section 10.7 of the Third Amended Plan are consistent with prior case law, reasonable in scope, and integral to the Third Amended Plan, and thus are appropriate.

EE.    <u>Implementation</u>. All documents necessary to implement the Third Amended Plan and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

FF.    <u>Good Faith</u>. The Debtors and Secured Creditors and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (i) consummate the Third Amended Plan and the agreements, settlements, transactions, and transfers contemplated thereby, and (ii) take the actions authorized and directed by this Confirmation Order.

GG.    <u>Objections</u>. All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, in any objection to the Third Amended Plan, and any such objections have been fully and fairly litigated.

HH.    <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Debtors have met their burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence, the Third Amended Plan satisfies all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and confirmation of the Third Amended Plan is proper and warranted.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Approval of the Disclosure Statement</u>. The Disclosure Statement is hereby approved as providing holders of Claims and Interests with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

2.    The Third Amended Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims or Interests and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Third Amended Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

3.    <u>Confirmation</u>. The Third Amended Plan annexed hereto as **<u>Exhibit A</u>** and each of its provisions, as modified pursuant to section 1127 of the Bankruptcy Code, are hereby approved and CONFIRMED under section 1129 of the Bankruptcy Code, and all compromises and settlements under the Third Amended Plan are approved pursuant to section 1129 of the Bankruptcy Code and Bankruptcy Rule 9019.

4.    <u>Incorporation by Reference</u>. The terms of the Third Amended Plan are incorporated herein by reference and are an integral part of this Confirmation Order. The terms of the Third Amended Plan and all other relevant and necessary documents shall be effective and binding as of the Effective Date on all parties in interest, including the Debtors and all holders of Claims and

Interests. The failure to specifically include or refer to any particular article, section, or provision of the Third Amended Plan or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

5.    <u>Exhibits to the Plan</u>. The exhibits to the Third Amended Plan and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtors, are authorized and approved.

6.    <u>Modifications Deemed Accepted</u>. The modifications to the Plan since the commencement of solicitation do not materially adversely affect or change the treatment of any Claims or Interests other than those of the Secured Creditors, to which modifications the Secured Creditors have agreed in connection with supporting the Third Amended Plan. Accordingly, pursuant to Bankruptcy Rule 3019 and in accordance with the Solicitation Order, such modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. To the extent any creditor or party in interest has not accepted the modifications to the Plan in writing, the treatment of Claims of any such creditors under the Third Amended Plan, as modified, is not adverse and, pursuant to Local Rule 3019-1, holders of Claims who voted to accept the solicitation version of the Plan are deemed to accept the Plan as modified. Prior to the Effective Date, the Debtors may make additional appropriate technical adjustments and modifications to the Third Amended Plan without further order or approval of the Court, subject to the consent requirements under section 12.5 of the Third Amended Plan.

7.      The Debtors and Secured Creditors are authorized to file or record a copy of this Confirmation Order in any appropriate public register or with any appropriate public agency, which, upon filing or recording, shall be (a) conclusive evidence of the release, discharge, and termination of any Claim, Lien, or interest that is terminated under the terms of the Third Amended Plan (b) upon the occurrence of the Effective Date, conclusive evidence of the transfer of the Residential Units set forth in Exhibit A of the Plan on the Effective Date by the Debtors pursuant to the Residential Unit Transfer Documents, along with any related Fixtures and Personal Property (as defined below) and Intangible Property (as defined below), to New Bloom Residential Holdco or such other designee of the Secured Creditors and (c) upon the Debtors' failure to timely pay the Balance of Payoff Amount prior to the expiration of the Retail Closing Period and entry of findings of the Court of same, conclusive evidence of the transfer of the Retail Units on such date by the Debtors pursuant to the Escrowed Retail Transfer Documents upon release by the Escrowee in accordance with the Escrow Agreement, along with any related Fixtures and Personal Property (as defined below) and Intangible Property (as defined below), to New Bloom Retail Holdco.

8.      This Confirmation Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title or state of title; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Third Amended

24

Plan and this Confirmation Order and to strike all Claims, interests, Liens, or other encumbrances in or against the Debtors' assets that are inconsistent with the Third Amended Plan and this Confirmation Order from their records, official and otherwise, without further order of the Court or act of any party.

9.      <u>Objections</u>. All objections to confirmation of the Third Amended Plan that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Third Amended Plan included therein, are overruled on the merits for the reasons stated on the record of the Confirmation Hearing and in this Confirmation Order.

10.     <u>Solicitation and Notice</u>. The Confirmation Hearing Notice complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The solicitation of votes on the Plan and the Solicitation Packages complied with the solicitation procedures in the Solicitation Procedures Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The Debtors solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation. The Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of votes under the Plan, and therefore are not, and on account of such solicitation will not be, liable at any

time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan.

11.    <u>Vesting of Assets</u>. Except as otherwise provided in the Third Amended Plan, this Confirmation Order, or in any agreement, instrument, or other documents incorporated therein, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estates, including, but not limited to, all rights, claims, and Causes of Action, shall vest in the Debtors free and clear of all Claims, liens, encumbrances, charges and other interests. After the Effective Date, the Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided in the Third Amended Plan or in this Confirmation Order.

12.    Upon the Effective Date, the terms and provisions of the Third Amended Plan and this Confirmation Order shall be binding in all respects upon (a) the Debtors and their affiliates, (b) all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Claims, interests, Liens, and other encumbrances, and all successors and assigns of any of the foregoing.

13.    This Confirmation Order is and shall be effective as a determination that the Debtors shall be discharged, on the Effective Date, from all Claims, interests, Liens, other encumbrances, and liabilities of any kind or nature whatsoever, to the fullest extent permitted under section 1141 of the Bankruptcy Code, except as otherwise specifically set forth in the Third Amended Plan and this Confirmation Order.

14.    Pursuant to section 1141(c) and 363(f) of the Bankruptcy Code, on the Effective Date, all Persons are forever prohibited and enjoined from taking any action against the Debtors

based on any Claims, interests, Liens, and other encumbrances to the extent such Claims, interests, Liens and other encumbrances are released or discharged pursuant to the terms of the Third Amended Plan, except as otherwise specifically set forth in the Third Amended Plan and this Confirmation Order.

15.    <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of the distributions to be made under the Third Amended Plan shall be governed solely by the terms of the Third Amended Plan.

16.    <u>Directors and Officers of the Debtors</u>. The officers of the respective Debtors immediately before the Effective Date shall serve as the initial officers of each of the respective Debtors on or after the Effective Date and in accordance with any employment agreement with the Debtors and applicable non-bankruptcy law.

17.    <u>Distributions under the Plan</u>. The provisions of Article VI of the Plan, including, without limitation, the provisions governing distributions, are fair and reasonable and are approved.  All distributions or transfers of the Debtors' assets or property, including without limitation the Residential Units and the Retail Units, with all right, title and interest of the Debtors in and to all fixtures, machinery systems, furnishings, equipment and personal property owned by Debtors attached or appurtenant to, located on and used in connection with the ownership, use, maintenance and operation thereof (collectively, the "**<u>Fixtures and Personal Property</u>**") and to all of the following items, to the extent related to the Residential Units or Retail Units, and to the extent assignable and without warranty: consents, licenses, approvals, certificates, permits, plans, development rights, warranties, guarantees and floor plans, plans and specifications, web sites and trademarks, if any (collectively, the "**<u>Intangible Property</u>**"), pursuant to the transactions contemplated under the Third Amended Plan, including without limitation, the Residential Unit

27

Transfer and the Retail Unit Transfer, if any, shall vest in New Bloom Residential Holdco and

New Bloom Retail Holdco, or such other designee of the Secured Creditors, respectively, free and

clear of all Claims, liens, encumbrances, charges and other interests, except as expressly provided

by the Third Amended Plan.

18.    <u>Disputed Claims</u>. The provisions of Article VII of the Third Amended Plan,

including, without limitation, the provisions governing procedures for resolving Disputed Claims,

are fair and reasonable and are approved.

19.    <u>Executory Contracts and Unexpired Leases</u>. The Debtors have exercised reasonable

business judgment in providing for the assumption, assumption and assignment, and rejection of

executory contracts and unexpired leases pursuant to section 8.1 of the Third Amended Plan. Each

assumption or assumption and assignment of an executory contract or unexpired lease pursuant to

section 8.1 of the Third Amended Plan shall be legal, valid, and binding upon the Debtors, their

successors, their assignees, and all non-Debtor parties to such executory contract or unexpired

lease and their successors and assigns, all to the same extent as if such assumption had been

effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered

before entry of this Confirmation Order. Moreover, the Debtors have appropriately cured, or

provided adequate assurance that the Debtors will cure, defaults (if any) under or relating to each

of the executory contracts and unexpired leases that are being assumed or assumed and assigned

by the Debtors pursuant to the Third Amended Plan.

20.    <u>Exemption from Certain Transfer Taxes</u>. Pursuant to Bankruptcy Code

section 1146: (a) the making or delivery of any instrument of transfer in connection with or

furtherance of the Plan; (b) the issuance, transfer or exchange of any securities, instruments or

documents pursuant to, in implementation of or as contemplated in the Plan; (c) the creation of

any Lien, mortgage, deed of trust, or other security interest; (d) the making or assignment of any

lease or sublease or the making or delivery of any deed or other instrument of transfer under,

pursuant to, in furtherance of, or in connection with the Plan; and (e) the issuance, renewal,

modification, or securing of indebtedness by such means, and the making, delivery or recording

of any deed or other instrument of transfer under, in furtherance of, or in connection with, the

Third Amended Plan, including, without limitation, this Confirmation Order, shall be deemed to

occur "under a plan" within the purview of section 1146(a) of the Bankruptcy Code and shall not

be subject to any document recording tax, stamp tax, conveyance fee, mortgage tax, real estate

transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory

filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment, and any

penalties, interest, or additions to any such tax, fee, assessment or other item identified above, to

the fullest extent provided by law, including, but not limited to: (i) mortgage recording taxes

imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate

transfer tax imposed under Article 31 of the Tax Law of the State of New York (including by

reason of a change in the equity ownership of the Debtor), (iii) the New York mansion tax imposed

under section 1402-a of the Tax Law of the State of New York exempted under section 1405 of

the Tax Law of the State of New York, (iv) the New York City Real Property transfer tax imposed

by title 11, chapter 21 of the New York City Administrative Code (including by reason of a change

in the equity ownership of the Debtor), and (v) any similar tax on the recording of deeds, transfers

of property or ownership interests in property, recording of mortgages or other security instruments

imposed by the State of New York, or any political subdivision thereof. Consistent with the

foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in

which any instrument hereunder is to be recorded (including, without limitation, the Register of

the City of New York) is, pursuant to this Confirmation Order, ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax. All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Project any taxes from which the transactions effectuated pursuant to the Third Amended Plan and this Confirmation Order are exempt, pursuant to and in furtherance of Bankruptcy Code section 1146(a) and to the greatest extent provided by law. For the absence of doubt, all transactions under the Third Amended Plan, including, without limitation, the transactions contemplated in section 5.1 of the Plan, including, (a) the transfer of the Residential Units to the Secured Creditors or their designee on or after the Effective Date and any replacement mortgage on the Residential Units in connection with replacing any current pledge of existing Secured Lender loans, (b) the transfer, if any, of the Retail Units to the Secured Creditors or their designee at the expiration of the Retail Closing Period and any replacement mortgage on the Retail Units in connection with replacing any current pledge of existing Secured Lender loans, and (c) the refinancing, if any, of the Retail Units by the Debtors or their designee during the Retail Closing Period, shall be deemed made pursuant to and under the Third Amended Plan and thus shall be entitled to the foregoing exemptions under section 1146(a) of the Bankruptcy Code.

21.    <u>Insurance Policies</u>. All insurance policies issued to or providing coverage to the Debtors at any time (the "**Insurance Policies**") pursuant to which the Debtors have any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts and shall be assumed, or assumed and assigned, by the respective Debtors in accordance with sections 8.1 and 8.3 of the Third Amended Plan and shall continue unaltered and in full force and effect. Furthermore, the discharge and release of the Debtors, and the re-vesting of property in the

Debtors, each as provided in the Third Amended Plan and this Confirmation Order, shall not diminish nor impair the enforceability of any Insurance Policies that may cover Claims against any Debtors or any other Person or Entity.

22.     <u>Term of Injunctions or Stays</u>. Unless otherwise provided in the Third Amended Plan or in this Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases. Notwithstanding anything to the contrary in the Third Amended Plan or this Confirmation Order, neither the Third Amended Plan nor this Confirmation Order shall limit, impair, or otherwise affect the Court's ability to enter an order lifting any stay that is in effect.

23.     <u>Releases, Exculpation, Injunction</u>. The following release, exculpation, injunction, and related provisions set forth in Article X of the Third Amended Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities to the extent provided therein:

   **(i)**    ***Injunction (Plan § 10.5).***

    **a)**    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or in relation to any Claim extinguished, discharged, or released pursuant to the Plan; <u>provided</u>, <u>however</u>, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.**

    **b)**    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as expressly agreed to by the Debtors and a holder of a Claim, all Entities who have held, hold, or may hold a Claim and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims that will be or are extinguished, discharged, or released pursuant**

31

to the Plan from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors or the property of any of the Debtors; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the property of any of the Debtors; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, or the property of any of the Debtors; (iv) asserting any right of setoff, directly or indirectly, against any obligation owing to the Debtors, or against property or interests in property of any of the Debtors, except as provided in the Plan; (v) acting or proceeding in any manner that does not conform to or comply with the provisions of the Plan; and (vi) exercising any remedies under the Loan Documents or the Definitive Documents.

     (ii)    *Releases (Plan § 10.6).*

     a)    <u>Mutual Releases of Debtors and Secured Creditors</u>. As of the Effective Date, but subject to section 10.6(b) of the Plan and except for the rights that remain in effect from and after the Effective Date to enforce: (1) the Plan; and (2) the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the services rendered by the Released Parties to formulate and facilitate confirmation and consummation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed released and discharged, to the maximum extent permitted by law, by the Debtors, their Estates, the Secured Creditors, and each of the other Released Parties, on behalf of themselves and their respective successors, assigns, and representatives, and any and all Persons that may purport to assert any Cause of Action or cause of action derivatively, by, through or on behalf of any of the Released Parties, from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, causes of action, remedies, losses, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any of the Released Parties would have been legally entitled to assert in their own right or on behalf of the holder of any Claim or Interest or other Person against another Released Party, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Project, the Chapter 11 Cases, the transfer, purchase, or sale of any asset of the Debtors, the business or contractual arrangements between any of the Debtors and any Released Party, including, but not limited to the Loans, Loan Documents, and the Forbearance Agreement, the restructuring of any Claim or Interest during the Chapter 11 Cases, the Disclosure Statement, the Plan, the Definitive Documents, or any related agreements, instruments, and other documents, and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission (collectively, "<u>Released Claims</u>"), in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; <u>provided</u>, <u>however</u>, that nothing in this section 10.6(a) shall be

construed to release the Released Parties from (X) such Released Claims to the extent arising from willful misconduct (subject to section 9.2(d) of the Plan) or fraud, in each case as determined by a Final Order or (Y) subject to section 5.3 of the Plan, any Retail Closing Period Damage Claim; <u>provided further</u>, <u>however</u>, that the Debtors and Guarantors ("<u>Indemnitors</u>") shall indemnify the Secured Creditors for costs and liabilities incurred by the Secured Creditors arising from claims or causes of action asserted by third-party purchasers of residential units based on: (a) allegations of any inaccurate or incomplete disclosure or misrepresentations made by Fee Owner (the "<u>Original Sponsor</u>") in the Offering Plan, (b) allegations of construction defects or incomplete work undertaken by or on behalf of the Original Sponsor, and (c) failure of the Original Sponsor to comply with the provisions of the Offering Plan, excluding any amendments to the Offering Plan filed by the Secured Creditors or their designee as Successor-Sponsor (collectively, the "<u>Original Sponsor Claims</u>"); provided that the Secured Creditors file the "Successor-Sponsor Amendment" (as defined in the Management Terms for Condominium in Exhibit B) to the Offering Plan. Indemnitors shall have the right to select counsel and control the defense of Original Sponsor Claims, including, without limitation, any settlements. The Released Parties shall be permanently enjoined from prosecuting any of the foregoing claims or Causes of Action released under this section 10.6(a) against each of the other Released Parties.

b)      Notwithstanding any provision in the Plan or the Confirmation Order to the contrary, the Releases in section 10.6(a) of the Plan shall not apply to any Released Claims based on or relating to, or in any manner arising from, the Retail Units, including Substitute Senior Note B, and Substitute Senior Mortgage B unless and until, either completion of the Retail Unit Transfer or the payment of the Balance of Payoff Amount, in each case in accordance with the Plan, at which time Debtors shall be released from any and all Released Claims that any of the Released Parties have or may have through the date of the Retail Unit Transfer or payment of the Balance of Payoff Amount, as applicable, including, but not limited to, the Allowed Senior Secured Claim, Allowed Mezzanine Secured Claim, and Allowed Mezzanine Deficiency Claim, if any, Substitute Senior Note B, and Substitute Senior Mortgage B; provided, however, that such releases shall not release the Debtors from (i) subject to section 5.3 of the Plan, Retail Closing Period Damage Claims, and (ii) the indemnification obligations under section 10.6(a) above with respect to Original Sponsor Claims.

c)      Notwithstanding anything to the contrary herein, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

d)      <u>Guarantor Releases</u>. The Guarantors under the Loans and Loan Documents shall be deemed, and shall be, discharged and released of any liability with respect to the Allowed Senior Secured Claims, the Allowed Mezzanine Secured Claim, and, if any, the Allowed Mezzanine Deficiency Claim, the Loans, Loan Documents, Forbearance Agreement, and Definitive Documents, and any obligations under the guarantees given in connection with the foregoing, and any other liabilities for which the Debtors are released pursuant to section 10.6(a) and section 10.6(b) of the Plan solely to the extent the Debtors are released

pursuant to the Plan, including pursuant to sections 10.6(a) and (b) of the Plan; **provided, however,** that the Guarantors shall not be released from the obligations under sections 5.3 or 10.6(a) of the Plan with respect to Retail Closing Period Damage Claims or the Original Sponsor Claims.

(iii)      *Exculpation (Plan § 10.7)*. To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date and up to and including the Effective Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, the Disclosure Statement and the Plan, including the formulation, negotiation, preparation, dissemination, solicitation, confirmation, funding, consummation, implementation, and administration thereof or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, in each case as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

24.    <u>Governmental Approvals</u>. Except as otherwise expressly provided for or contemplated in the Third Amended Plan or this Confirmation Order, and except for any regulatory approvals that might be required by reason of the business conducted by the Debtors, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Third Amended Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Third Amended Plan, the Third Amended Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto. Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept the validity of (a) any and all documents, trust agreements, mortgages, and instruments, and (b) all actions of the Debtors that are necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Third Amended Plan, this Confirmation Order, and the agreements created or contemplated by the Third Amended Plan or this Confirmation Order.

25.     <u>Injunction Against Interference with Plan</u>. Upon entry of this Confirmation Order, all holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Third Amended Plan.

26.     <u>Notice of Entry of Confirmation Order and Effective Date</u>. On or before the fourteenth (14th) day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the U.S. Trustee, and other parties in interest, by causing notice of entry of this Confirmation Order to be delivered to such parties by first-class mail, postage prepaid. The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

27.     <u>Notice of Effective Date</u>. As soon as practicable after the occurrence of the Effective Date, the Debtors shall serve notice of the Effective Date on all creditors and interest holders, the U.S. Trustee, and other parties in interest, by causing notice of the Effective Date to be delivered to such parties by first-class mail, postage prepaid. The notice of Effective Date shall include notice of (a) the deadline for filing proofs of claim arising out of rejection of executory contracts upon the Effective Date or thereafter and (b) the deadline for filing Administrative Claims (which shall be thirty (30) calendar days after the Effective Date).

28.     <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the Chapter 11 Cases, the Third Amended Plan, and the implementation of this Confirmation

Order, including, without limitation, those matters set forth in section 11.1 of the Third Amended Plan.

29.     <u>Payment of Statutory Fees</u>. Except as provided in sections 2.1 and 12.1 of the Third Amended Plan, on the Effective Date and thereafter as may be required, the Debtors shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case, or until such time as a final decree is entered closing a particular Debtor's case, a Final Order converting such Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing such Debtor's case is entered.

30.     Notwithstanding the foregoing paragraph, the Residential Unit Transfer, as described in the Third Amended Plan and paragraph W herein, shall not give rise to a U.S. Trustee fee under 28 U.S.C. § 1930(a)(6).

31.     <u>Documents, Mortgages, and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Third Amended Plan including, without limitation, this Order, the Residential Unit Transfer Documents, the Residential Unit Transfer Ancillary Documents, if any, and upon a Retail Unit Transfer pursuant to the Plan, if any, the Escrowed Retail Transfer Documents, and the Retail Unit Transfer Ancillary Documents, if any.

32.     <u>Activities in Anticipation of the Effective Date</u>. The Debtors are hereby authorized and empowered to take all necessary steps, and pay all related expenses, in anticipation of the Effective Date, including, without limitation, effectuating the transactions contemplated by the Third Amended Plan and this Confirmation Order.

33.    <u>Substantial Consummation</u>. Without limitation, upon completion of the Residential Unit Transfer in accordance with the Third Amended Plan, the Third Amended Plan shall be deemed to be substantially consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code, if not earlier.

34.    <u>Severability</u>. This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Third Amended Plan, as it may be amended in accordance with section 12.5 of the Third Amended Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Third Amended Plan and may not be deleted or amended other than in accordance with section 12.5 of the Third Amended Plan; and (c) non-severable and mutually dependent.

35.    <u>Immediate Binding Effect</u>. Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Third Amended Plan (including the exhibits thereto and all documents and agreements executed pursuant thereto or in connection therewith) and this Confirmation Order shall be immediately effective and enforceable and shall bind the Debtors, the Released Parties, the Exculpated Parties, all holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Third Amended Plan or whether the holders of such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected the Third Amended Plan), any other person giving, acquiring, or receiving property under the Third Amended Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing. On the Effective Date, all settlements, compromises, releases (including, without

limitation, the releases set forth in section 10.6 of the Third Amended Plan), waivers, discharges, exculpations, and injunctions set forth in the Third Amended Plan shall be effective and binding on Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date.

36.    <u>Conflicts Between Confirmation Order and the Third Amended Plan</u>. To the extent of any inconsistency between the provisions of the Third Amended Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court.

37.    <u>Stay of Confirmation</u>. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062.

38.    <u>Modifications and Amendments</u>. The Third Amended Plan may be amended, modified, or supplemented by the Debtors in accordance with section 12.5 of the Third Amended Plan.

39.    <u>Final Order</u>. This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence upon the entry hereof.

40.    <u>Reservation of Rights</u>. In the event that the Secured Creditors believe that the Debtors have failed to fully consummate the Third Amended Plan or any of the transactions contemplated thereunder including, without limitation, the Residential Unit Transfer or the Retail Unit Transfer or, alternatively, the payment of the Balance of Payoff Amount prior to the expiration of the Retail Closing Period, the Secured Creditors reserve all rights to seek any relief

from the Court they deem appropriate including, without limitation, to enforce the terms of the

Third Amended Plan, and the Debtors reserve all rights to oppose any such requested relief.


Dated: September ___, 2024
       New York, New York


_____
**THE HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

**EXHIBIT A**

<u>The Plan</u>

*(Attached)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                          :

In re                             :         Chapter 11
                                            :

HUDSON 888 OWNER LLC and         :         Case No. 24-10021 (MEW)
HUDSON 888 HOLDCO LLC,          :
                                            :         (Jointly Administered)

                     Debtors.[1]     :
                                            :
------------------------------------------------------------ X

## THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF HUDSON 888 OWNER LLC AND HUDSON 888 HOLDCO LLC

**HERRICK, FEINSTEIN LLP**
Stephen B. Selbst
Robert D. Gordon
Nicholas G.O. Veliky
Rodger T. Quigley
2 Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Attorneys for the Debtors*

Dated:   September 18, 2024
            New York, New York

---

[1]    The Debtors' principal offices are located at 150 East 52nd Street, Suite 8002, New York, New York 10022. The last four digits of the Federal Tax Id. No. of Hudson 888 Owner LLC are 6993. The last four digits of the Federal Tax Id. No. of Hudson 888 Holdco LLC are 4666.

1

Hudson 888 Owner LLC ("**Fee Owner**"), a Delaware limited liability company, and Hudson 888 Holdco LLC ("**Holdco**" and, together with Fee Owner, the "**Debtors**"), a Delaware limited liability company, as the debtors and debtors in possession in the above-captioned jointly-administered Chapter 11 Cases, propose the following chapter 11 plan of reorganization pursuant to Bankruptcy Code section 1121(a). Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

A.    **Definitions**. The following terms shall have the respective meanings specified below:

1.1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including all fees and charges assessed against the Debtors' estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

1.2.    "*Affiliate Capital Contribution*" means the capital contributions to be made by the Debtors' parent company, Xinyuan Real Estate Co., Ltd., or its affiliates to fully satisfy all Allowed Fee Claims.

1.3.    "*Allowed*" means, with reference to any Claim or Interest, a Claim or Interest: (a) arising on or before the Effective Date as to which: (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to Bankruptcy Code section 502(a), (c), (d), Bankruptcy Rule 3012, or otherwise, has been interposed and not withdrawn; or (ii) the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors; or (c) expressly allowed hereunder; provided, however, that notwithstanding the foregoing: (x) unless expressly waived in the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed any limitations or maximum amounts permitted by the Bankruptcy Code, including Bankruptcy Code sections 502 and 503, to the extent applicable, and (y) the Debtors shall retain all counterclaims and rights of setoff or recoupment with respect to Allowed Claims.

1.4.    "*Amendment to Declaration*" has the meaning set forth in section 5.1 of the Plan.

1.5.    "*Asset*" means all of the right, title, and interest of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

1.6.    "*Avoidance Actions*" means any and all actual or potential Causes of Action of the Debtors arising under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance action claims, rights, and Causes of Action, to

2

the extent not previously transferred, sold, assigned, or waived under any prior order of the Bankruptcy Court in the Chapter 11 Cases.

1.7.    "***Balance of Payoff Amount***" means $46 million plus $15,333.33 per diem to begin accruing upon the earlier of (i) the commencement of the Retail Closing Period or (ii) August 8, 2024.

1.8.    "***Ballot***" means the form(s) approved by the Court and distributed to holders of Impaired Claims entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

1.9.    "***Bankruptcy Code***" means title 11 of the United States Code, as amended from time to time.

1.10.    "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of New York.

1.11.    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local bankruptcy rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.12.    "***Business Day***" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.13.    "***Cash***" means legal tender of the United States of America.

1.14.    "***Cash Management Account***" has the meaning in the Mortgage Loan Agreement.

1.15.    "***Causes of Action***" means, as broadly as possible, any action, claim, counterclaim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, judgment, account, defense, remedy, right of offset or recoupment, of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, arising in contract or tort, in law or equity, or pursuant to any other theory of law, belonging to the Debtors, whether arising before, on, or after the Petition Date. Causes of Action also includes: (a) the right to object to Claims or Interests; and (b) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code.

1.16.    "***Chapter 11 Cases***" means the jointly-administered chapter 11 cases styled *In re Hudson 888 Owner LLC and Hudson 888 Holdco LLC*, pending as Case No. 24-10021 (MEW) (Bankr. S.D.N.Y.).

1.17.    "***Claim***" means a "claim," as such term is defined in Bankruptcy Code section 101(5), against the Debtors or the Debtors' estates.

3

1.18.    "*Class*" means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

1.19.    "*Condominium*" means Bloom on Forty Fifth Condominium, located at 500 West 45th Street, New York, New York.

1.20.    "*Condominium Documents*" has the meaning set forth in the Mortgage Loan Agreement.

1.21.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.22.    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.23.    "*Confirmation Order*" means the order in form and substance acceptable to the Debtors and Secured Creditors entered by the Bankruptcy Court confirming the Plan.

1.24.    "*Consolidated Senior Note*" has the meaning set forth in section 5.1 of the Plan.

1.25.    "*Debtors*" has the meaning set forth in the introductory paragraph of the Plan.

1.26.    "*Declaration*" means that certain Amended and Restated Declaration of Condominium dated September 2, 2021, and recorded in the Office of the City Register, New York County on February 24, 2022, in CRFN 2022000082769 (with respect to Block 1073, Lots 1406-1497), and on September 27, 2022, in CRFN 2022000371633 (with respect to Lots 1401-1405), as may be amended from time to time.

1.27.    "*Definitive Documents*" means: (a) the Confirmation Order, (b) the Senior Loan Structuring Documents; (c) the Escrow Agreement; (d) the Escrowed Retail Transfer Documents; (e) the Residential Unit Transfer Documents; and (f) the Amendment to Declaration.

1.28.    "*Disallowed*" means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.29.    "*Disclosure Statement*" means the disclosure statement for the Plan, as required by Bankruptcy Code section 1125.

1.30.    "*Disputed*" means a Claim or Interest, including an Administrative Expense Claim: (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under Bankruptcy Code sections 502, 503, or 1111 or Bankruptcy Rule 3003(b)(1); or (b) as to which the Debtors or any party in interest has interposed a timely objection, request for estimation, or other challenge and such objection, request for estimation, or other challenge has not been withdrawn or determined by a Final Order.

4

1.31.   "***Effective Date***" means the date that is the first Business Day after the Confirmation Date on which the conditions to the occurrence of the Effective Date under the Plan have been satisfied or waived and on which the Residential Unit Transfer shall occur.

1.32.   "***Entity***" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit (as defined in Bankruptcy Code section 101(27)) or any political subdivision thereof, or other person (as defined in Bankruptcy Code section 101(41)) or other entity.

1.33.   "***Escrow Agreement***" means the escrow agreement between Escrowee, the Debtors, and the Secured Creditors governing the retention in escrow and release from escrow of the Escrowed Retail Transfer Documents in accordance with the Plan.

1.34.   "***Escrowed Retail Transfer Documents***"  means (a) a bargain and sale deed with covenants against grantor's acts (substantially in the form of Unit Deed attached to the Offering Plan as Exhibit 7), subject to the permitted encumbrances listed on **Exhibit A** attached hereto for the Retail Units and the liens or encumbrances created or filed by, on behalf of, or for the benefit of, any Secured Creditor in connection with the transactions contemplated under the Plan, including, without limitation, Substitute Senior Mortgage B (collectively, the "**Retail Units Permitted Encumbrances**"), and (b) an assignment and assumption of leases executed by Fee Owner. The Escrowed Retail Transfer Documents shall be undated and held in escrow by Escrowee upon the Effective Date.

1.35.   "***Escrowee***" means the nationally-recognized title company designated jointly by the Debtors and the Secured Creditors to serve as escrow agent with respect to the Escrowed Retail Transfer Documents pursuant to the Escrow Agreement.

1.36.   "***Estates***" means the estates of the Debtors created under Bankruptcy Code section 541.

1.37.   "***Exculpated Parties***" means collectively, and in each case as an "Exculpated Party," solely in their capacities as such: (a) the Debtors and any attorneys, accountants, advisors, appraisers, and other professionals retained by or on behalf of the Debtors (b) the Secured Creditors and any attorneys, accountants, advisors, appraisers, and other professionals retained by or on behalf of Secured Creditors,  and (c) Related Parties for each of the foregoing.

1.38.   "***Existing Senior Mortgage***" has the meaning set forth in section 5.1 of the Plan.

1.39.   "***Existing Senior Note A***" has the meaning set forth in section 5.1 of the Plan.

1.40.   "***Existing Senior Note B***" has the meaning set forth in section 5.1 of the Plan.

1.41.   "***Existing Senior Notes***" has the meaning set forth in section 5.1 of the Plan.

1.42.   "***Fee Claim***" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the

5

Debtors in the Chapter 11 Cases by an order of the Bankruptcy Court pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331, or the Claim of a professional or indenture trustee pursuant to section 503(b)(4) or (5).

1.43. "*Fee Owner*" has the meaning set forth in the introductory paragraph of the Plan.

1.44. "*Final GUC Distribution*" has the meaning set forth in Section 4.5 of the Plan.

1.45. "*Final Cash Collateral Order*" means that certain order of the Bankruptcy Court dated March 27, 2024 [Docket No. 119], which, among other things, authorized Fee Owner's use of cash collateral of Mortgage Debt Holder in accordance with the terms of the Order.

1.46. "*Final Order*" means an order, ruling, or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that: (i) is in full force and effect; (ii) is not stayed; and (iii) is no longer subject to review, reversal, or vacatur, whether by appeal or by writ of certiorari.

1.47. "*Forbearance Agreement*" means that certain Forbearance Agreement, dated as of September 29, 2023, by and among the Secured Creditors, the Debtors and the Guarantors, as amended by Amendment to Forbearance Agreement and Escrow Agreement, dated as of October 20, 2023, by and among the Secured Creditors, the Debtors and the Guarantors, and Reed Smith LLP in its capacity as escrow agent.

1.48. "*Forbearance Escrow Agreement*" means that certain Escrow Agreement, dated as of September 29, 2023, by and among the Secured Creditors, the Debtors, and the Guarantors, and Reed Smith LLP, in its capacity as escrow agent, as amended by Amendment to Forbearance Agreement and Escrow Agreement, dated as of October 20, 2023, by and among the Secured Creditors, the Debtors and the Guarantors, and Reed Smith LLP in its capacity as escrow agent.

1.49. "*General Unsecured Claim*" means any Claim that is not (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, or (iv) Allowed Mezzanine Deficiency Claim.

1.50. "*Governmental Unit*" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

1.51. "*Guarantors*" means Xin Development Group International, Inc. and Xinyuan Real Estate Co., Ltd.

1.52. "*Holdco*" has the meaning set forth in the introductory paragraph of the Plan.

1.53. "*Impaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, such Claim or Interest is "impaired" within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

1.54.    "*Indemnitors*" has the meaning set forth in section 10.6(a) of the Plan.

1.55.    "*Initial GUC Distribution*" has the meaning set forth in section 4.5 of the Plan.

1.56.    "*Insured Claims*" means any Claim or portion of a Claim that is, or may be, insured under the Debtors' insurance policies.

1.57.    "*Interest*" means any membership interest in the Debtors.

1.58.    "*Lease Proceeds*" means the rental revenues generated from the Retail Units.

1.59.    "*Loan Agreements*" means the Mezz Loan Agreement and the Mortgage Loan Agreement.

1.60.    "*Loan Documents*" means (i) the Loan Documents as defined in the Mortgage Loan Agreement, and (ii) the Loan Documents as defined in the Mezz Loan Agreement.

1.61.    "*Loans*" means the Senior Loan and the Mezz Loan.

1.62.    "*Lien*" has the meaning set forth in Bankruptcy Code section 101(37).

1.63.    "*Mezz Debt Holder*" means DOF II-Bloom Mezz LLC.

1.64.    "*Mezz Loan*" means the mezzanine loan held by Mezz Debt Holder under which Holdco is the borrower and which is secured by a pledge of Holdco's equity interest in Fee Owner.

1.65.    "*Mezz Loan Agreement*" means that certain Mezzanine Loan Agreement dated as of January 21, 2021 between Holdco and CG45 Funding, LLC, predecessor-in-interest to Mezz Debt Holder.

1.66.    "*Mezzanine Deficiency Claim*" means an Allowed General Unsecured Claim against Holdco held by Mezz Debt Holder in an amount equal to the amount of the Allowed Claims held by Mezz Debt Holder related to the Mezz Loan as of the Confirmation Date in excess of the value of the Interests in Fee Owner.

1.67.    "*Mezzanine Secured Claim*" means an Allowed Secured Claim arising under or related to  the Mezz Loan.

1.68.    "*Mortgage Debt Holder*" means DOF II-Bloom Senior LLC.

1.69.    "*Mortgage Loan Agreement*" means that certain Loan Agreement dated as of January 21, 2021 between Fee Owner and Dreg Cared Lender LLC, predecessor-in-interest to Mortgage Debt Holder.

1.70.    "*New Bloom Residential Holdco*" means DOF II-Bloom Resi Owner LLC.

1.71.    "***New Bloom Retail Holdco***" means DOF II-Bloom Retail Owner LLC or such other entity to be formed and identified by Mortgage Debt Holder prior to the occurrence of the Retail Unit Transfer, if any.

1.72.    "***Offering Plan***" means that certain Amended and Restated Condominium Offering Plan for Bloom on Forty Fifth, as the same may be amended, modified, or terminated from time to time.

1.73.    "***Original Sponsor Claims***" has the meaning set forth in section 10.6 of the Plan.

1.74.    "***Person***" means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, or any political subdivision thereof, or any other Entity.

1.75.    "***Petition Date***" means January 7, 2024.

1.76.    "***Plan***" means this chapter 11 plan of reorganization, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement, if any), as the same may be amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code.

1.77.    "***Plan Supplement***" means a supplemental appendix to the Plan, if any, containing, among other things, form of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court. The documents constituting the Plan Supplement may be filed on an iterative basis. The Debtors shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date, in accordance with section 12.6(b) of the Plan.

1.78.    "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

1.79.    "***Project***" means the mixed-use real estate project commonly known as the Bloom on Forty Fifth Condominium, located at 500 West 45th Street, New York, New York.

1.80.    "***Related Parties***" means with respect to any Exculpated Party or any Released Party, (i) such Persons' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, (ii) all of their respective current and former officers, directors, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, solely to the extent such Persons and Entities acted on behalf of the Released Parties in connection with the matters as to which releases are provided herein, and (iii) such Persons' respective heirs, executors, estates, servants and nominees.

1.81.    "***Released Claims***" has the meaning set forth in section 10.6(a) of the Plan.

8

1.82.    "**_Released Parties_**" means collectively, and in each case, solely in their capacities as such: (a) the Debtors and any attorneys, accountants, advisors, appraisers, and other professionals retained by or on behalf of the Debtors; (b) the Debtors' Estates; (c) the Secured Creditors and their attorneys, accountants, advisors, appraisers, and other professionals; and (d) Related Parties for each of the foregoing.

1.83.    "**_Remedial Actions_**" has the meaning set forth in section 5.4 of the Plan.

1.84.    "**_Residential Unit Transfer_**" has the meaning set forth in section 5.1 of the Plan.

1.85.    "**_Residential Units_**" means the Project's remaining unsold residential condominium units.[2]

1.86.    "**_Residential Unit Transfer Ancillary Documents_**" has the meaning set forth in section 5.1(b) of the Plan.

1.87.    "**_Residential Unit Transfer Documents_**" has the meaning set forth in section 5.1(b) of the Plan.

1.88.    "**_Residential Units Permitted Encumbrances_**" has the meaning set forth in section 5.1 of the Plan.

1.89.    "**_Restoration Election Deadline_**" has the meaning set forth in section 5.4 of the Plan.

1.90.    "**_Restoration Professional(s)_**" has the meaning set forth in section 5.4 of the Plan.

1.91.    "**_Retail Closing Period_**" has the meaning set forth in section 5.1 of the Plan.

1.92.    "**_Retail Closing Period Damage Claim_**" has the meaning set forth in section 5.3(b)(i) of the Plan.

1.93.    "**_Retail Unit Transfer_**" has the meaning set forth in section 5.1 of the Plan.

1.94.    "**_Retail Unit Transfer Ancillary Documents_**" has the meaning set forth in section 5.1(c) of the Plan.

1.95.    "**_Retail Units_**" means the Project's commercial condominium units.

1.96.    "**_Retail Units Permitted Encumbrances_**" has the meaning set forth in the definition of Escrowed Retail Transfer Documents.

1.97.    "**_Schedules_**" means the Debtors' schedules of assets and liabilities and statement of financial affairs.

---

[2] [NTD – list of the unsold residential units be included as an exhibit to the confirmation order.]]

1.98.  "**Secured Claim**" means a Claim to the extent: (i) secured by a valid, perfected and enforceable Lien on property of the Debtors' estates, the amount of which is equal to or less than the value of such property as (a) set forth in the Plan; (b) agreed to by the holder of such Claim and the Debtors; or (c) determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with Bankruptcy Code section 553.

1.99.  "**Secured Creditors**" means Mortgage Debt Holder and Mezz Debt Holder.

1.100.  "**Senior Loan**" means the senior loan held by Mortgage Debt Holder under which Fee Owner is the borrower and which is secured by a mortgage on the Project, along with a security interest in the rents and other revenues of the Project.

1.101.  "**Senior Loan Splitter Agreement**" has the meaning set forth in section 5.1 of the Plan.

1.102.  "**Senior Loan Structuring Transaction**" has the meaning set forth in section 5.1 of the Plan.

1.103.  "**Senior Loan Structuring Transaction Documents**" has the meaning set forth in section 5.1 of the Plan.

1.104.  "**Senior Secured Claim**" means an Allowed Secured Claim arising under the Senior Loan.

1.105.  "**State Court Action**" means the litigation titled *Hudson 888 Owner, LLC, et al. v. DOF II-Bloom Senior LLC, et al.*, Index No. 161355/2023 (Sup. Ct. N.Y. Cnty.).

1.106.  "**Substitute Senior Mortgage A**" has the meaning set forth in section 5.1 of the Plan.

1.107.  "**Substitute Senior Mortgage B**" has the meaning set forth in section 5.1 of the Plan.

1.108.  "**Substitute Senior Mortgages**" has the meaning set forth in section 5.1 of the Plan.

1.109.  "**Substitute Senior Note A**" has the meaning set forth in section 5.1 of the Plan.

1.110.  "**Substitute Senior Note B**" has the meaning set forth in section 5.1 of the Plan.

1.111.  "**Substitute Senior Notes**" has the meaning set forth in section 5.1 of the Plan.

1.112.  "**Third-Party Payors**" means XIN Development Group International, Inc. and Xinyuan Real Estate Co., Ltd.

1.113.  "**U.S. Trustee**" means the United States Trustee for the Southern District of New York.

1.114. "***Unimpaired***" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

1.115. "***Voting Record Date***" means May 31, 2024, the date established by the Bankruptcy Court as the date for determining those holders of Claims or Interests against the Debtors entitled to vote on the Plan.

B.      **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" or "sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      **Controlling Document**.

In the event of any conflict between the Plan and the Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan, the Plan shall govern and control, provided, however, that in the event of a conflict between the Confirmation Order and any of the Plan, the Disclosure Statement, or other Definitive Document, the Confirmation Order shall govern and control in all respects.

# ARTICLE II

## ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

2.1.     *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim), shall receive in full and final satisfaction, settlement, and release of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of: (a) the Effective Date; and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim. As set forth in section 12.1 of the Plan, any outstanding U.S. Trustee fees accruing postpetition prior to the Effective Date shall be paid from Fee Owner's Cash Management Account by the Secured Creditors or their designee. Any U.S. Trustee fees accruing on or after the Effective Date (including any such fees on account of any distributions under the Plan on and after the Effective Date) until the closing of the Chapter 11 Cases shall be paid by the Debtors or the Third-Party Payors. All Allowed Administrative Claims and Allowed Fee Claims shall be paid by the Third-Party Payors as part of the Affiliate Capital Contribution; provided, however, that any unpaid operating expenses of the Project accrued prior to the Effective Date but unpaid as of the Effective Date shall be paid from the Cash Management Account.

2.2     *Fee Claims.*

(a)     All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtors and the U.S. Trustee on or before the date that is forty-five (45) calendar days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date. Objections to Fee Claims must be filed and served on counsel to the Debtors, the U.S. Trustee, and the requesting party and its counsel, if any, no later than twenty-one (21) calendar days after the filing of the final application for allowance and payment of a Fee Claim (unless otherwise agreed by the Debtors and the party requesting compensation of a Fee Claim, or as approved by the Court).

(b)     Allowed Fee Claims shall be paid in full, in Cash, by the Third-Party Payors, in such amounts as are Allowed by the Bankruptcy Court: (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Third-Party Payors. For the absence of doubt, this provision does not apply to the fees paid to Holland & Knight in connection with the negotiation and closing of sales of residential condominiums, which fees are paid at closing without need for further application to the Bankruptcy Court, pursuant to that certain Order of the Bankruptcy Court entered at Docket No. 133, unless such fees are otherwise required to be reviewed by the Bankruptcy Court under said order.

(c)     The Debtors and Third-Party Payors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date, including for services rendered or expenses incurred by the Debtors' professionals, as applicable, in the ordinary course and without the need for Bankruptcy Court approval.

12

2.3     *Priority Tax Claims*.

Each holder of an allowed Priority Tax Claim (if any) shall receive equal quarterly payments until January 2029 consistent with Bankruptcy Code section 1129(a)(9), with interest at the rate determined under applicable nonbankruptcy law as provided under section 511(a) of the Bankruptcy Code.

As of the date hereof, no Priority Tax Claim has been filed in the Chapter 11 Cases, and the deadline for governmental entities to file claims passed on July 5, 2024.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1.     *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under Bankruptcy Code sections 1122 and 1123(a)(1); provided, however, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Confirmation Date.

3.2.     *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are: (a) Impaired or Unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan in accordance with Bankruptcy Code section 1126 or, alternatively, not entitled to vote and automatically deemed to accept or reject the Plan pursuant to the Bankruptcy Code.[3]

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Senior Secured Claim | Impaired | Yes |
| 2 | Mezzanine Secured Claim | Impaired | Yes |
| 3 | Mezzanine Deficiency Claim | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Interests | Impaired | Yes |

---

[3]   As of the Voting Record Date, there was one holder of the Class 1 Claim and one holder of the Class 2 Claim and, if any, the Class 3 Claim. If any of these claims is subsequently sold or syndicated to more than one holder, a single agent shall be designated by all such holders to whom any payments due under the Plan shall be made on behalf of all such holders by the applicable Debtor.

3.3.    ***Elimination of Vacant Classes***.

Any Class of Claims against the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8).

3.4.    ***Voting Classes; Presumed Acceptance by Classes Failing to Vote***.

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request that the Bankruptcy Court at the Confirmation Hearing deem the Plan accepted by the holders of such Claims in such Class.

3.5.    ***Confirmation Pursuant to Bankruptcy Code Sections 1129(a)(10) and 1129(b)***.

The Debtors shall seek confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to any Class of Claims or Interests that rejects or is deemed to reject the Plan. The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to Bankruptcy Code section 1129(b) requires modification.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS.

4.1.    ***Treatment in General.***

Each holder of an Allowed Claim shall receive under the Plan the treatment described in this Article IV in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim, except to the extent different treatment is agreed to by the Debtors and the applicable holder of such Allowed Claim.

4.2.    ***Class 1: Senior Secured Claims.***

(a)    *Classification.* Class 1 consists of Senior Secured Claims.

(b)    *Allowance.*  Solely as part of and pursuant to the settlement of all disputes between the Debtors and the Secured Creditors as reflected in this consensual Plan, the Senior Secured Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors in the aggregate principal amount of $60,000,000, inclusive of all accrued but unpaid interest, costs, fees, and expenses then outstanding under the Senior Loan. The Mortgage Debt Holder shall not be required to file amended or supplemental proofs of Claim on account of Senior Secured Claims. For the avoidance of doubt, if this Plan is not confirmed or the Effective Date does not occur, the amount of the Allowed Senior Secured Claims shall be subject to further proceedings and determination by the Bankruptcy Court or agreement of Fee Owner and Mortgage Debt Holder.

14

(c)    *Treatment.*

(i)    On the Effective Date, Fee Owner shall effectuate the Residential Unit Transfer by delivering the Residential Unit Transfer Documents and shall deliver the Residential Unit Transfer Ancillary Documents in accordance with section 5.1(b) of the Plan.

(ii)    Upon the Residential Unit Transfer, (A) the Senior Secured Claims are partially satisfied and, notwithstanding the Senior Loan Structuring Transaction, the amount owed by the Debtors or Guarantors with respect to the Senior Secured Claims (including, without limitation, Substitute Senior Note B) shall not exceed the Balance of Payoff Amount, and (B) holders of Senior Secured Claims shall retain such interests in the Senior Loan as modified pursuant to the Senior Loan Structuring Transaction set forth in section 5.1 of the Plan, including receiving (1) Substitute Senior Note A in the amount of $14,000,000, and Substitute Senior Mortgage A, securing a maximum indebtedness of $14,0000,000 and encumbering the Residential Units (but not the Retail Units); and (2) Substitute Senior Note B in the amount of $46,000,000 and Substitute Senior Mortgage B, securing a maximum indebtedness of $46,000,000 and encumbering the Retail Units (but not the Residential Units); provided that upon the Residential Unit Transfer, the Debtors and Guarantors shall be deemed, and shall be, released from any and all obligations under the Substitute Senior Note A and Substitute Senior Mortgage A, any guaranty of such obligations, and any and all obligations on account of the Residential Units under the Loan Documents and Senior Loan Structuring Documents, and New Bloom Residential Holdco shall be deemed to have, and shall have, assumed all debts and obligations under Substitute Senior Note A and Substitute Senior Mortgage A;

(iii)    On the Effective Date, the Escrowed Retail Transfer Documents shall be deposited with and held in escrow by Escrowee subject to payment by the Debtors or their designee of the Balance of Payoff Amount within the Retail Closing Period;

(iv)    During the Retail Closing Period, no interest (default or non-default rate) shall accrue on the Senior Secured Claim;

(v)    Upon the

(a)    payment in cash in full of the Balance of Payoff Amount, (1) all remaining Senior Secured Claims, including, without limitation, any and all obligations due under Substitute Senior Note B and Substitute Senior Mortgage B, are fully satisfied and discharged, and (2) any liens or encumbrances created or filed by or on behalf of any Secured Creditor upon or against the Retail Units, and any debts or obligations of the Debtors and Guarantors under the Loan Documents and Senior Loan Structuring

15

Documents, including, without limitation, Substitute Senior Note B and Substitute Senior Mortgage B, shall be released, discharged, terminated, and removed, and Escrowee shall release the Escrowed Retail Transfer Documents to the Debtors or their designee;

(b)   Debtors' failure to pay the Balance of Payoff Amount by the end of the Retail Closing Period, (1) the Escrowed Retail Transfer Documents shall be released by Escrowee to New Bloom Retail Holdco, and dated as of the first day after the expiration of the Retail Closing Period, and (2) Fee Owner shall execute and/or deliver (A) New York City and New York State transfer tax forms necessary for the transfer of the Retail Units to New Bloom Retail Holdco pursuant to the Plan and (B) Fee Owner's organizational documents, consents or resolutions, a customary title affidavit in form and substance reasonably satisfactory to Fee Owner and reasonably required by New Bloom Retail Holdco's title company to issue an owner's title policy insuring title to the Retail Units to New Bloom Retail Holdco, subject only to the Retail Units Permitted Encumbrances; *provided*, that the Secured Creditors or their designee shall be entitled to file a notice with the Bankruptcy Court requesting that it enter an Order finding that the Debtors failed to make the Balance of Payoff Amount and that Escrowee is authorized to release the Escrowed Retail Transfer Documents to the Secured Creditors or their designee; *provided further* that the Debtors reserve the right to oppose such request in good faith solely on the bases that: (i) the Retail Closing Period has not expired; (ii) the Balance of Payoff Amount was paid to the Secured Creditors prior to the expiration of the Retail Closing Period; or (iii) acts or omissions by the Secured Creditors, their affiliates, or designees during the Retail Closing Period caused the failure of Fee Owner to be able to refinance the Retail Units and pay the Balance of Payoff Amount prior to expiration of the Retail Closing Period; *provided further* that the foregoing is not intended to, and shall not, establish any affirmative obligation of the Secured Creditors to facilitate the Debtors' efforts to obtain financing to make the Balance of Payoff Amount payment other than the obligations described in paragraph 2 of Exhibit B to the Plan (Management Terms for Condominium); *provided further* that any costs, fees or expenses incurred by the Secured Creditors in seeking such relief, if granted, shall be Administrative Claims payable by the Debtors or Third-Party Payors; and

16

(vi)     Upon either payment of the Balance of Payoff Amount or release of the Escrowed Retail Transfer Documents to the Secured Creditors in accordance with sections 4.2(c)(v)(a) or 4.2(c)(v)(b), respectively, (A) the Debtors and Guarantors are released from any and all obligations under the Loan Documents and Senior Loan Structuring Documents, including, without limitation, the Substitute Senior Note B and Substitute Senior Mortgage B and any guaranty with respect to such obligations, and New Bloom Retail Holdco shall be deemed to have, and shall have, assumed all debts and obligations under Substitute Senior Note B and Substitute Senior Mortgage B and (B) all of the Senior Secured Claims are fully satisfied and discharged, provided that such indebtedness and liens evidenced by Substitute Senior Note A and Substitute Senior Mortgage A shall continue to encumber the Residential Units and upon the Retail Unit Transfer, if any, Substitute Senior Note B and Substitute Senior Mortgage B shall continue to encumber the Retail Units and New Bloom Retail Holdco shall be deemed to have, and shall have, assumed all debts and obligations under Substitute Senior Note B and Substitute Senior Mortgage B, as set forth in section 5.1 of the Plan. For avoidance of doubt, neither of the Debtors or Guarantors shall have any obligation or liability under Substitute Senior Note B in excess of or separate and distinct from obligations to pay the Balance of the Payoff Amount hereunder.

(d)     *Voting.* Class 1 is impaired. Holders of Allowed Senior Secured Claims are entitled to vote to accept or reject the Plan.

### 4.3.     *Class 2: Mezzanine Secured Claims.*

(a)     *Classification.* Class 2 consists of Mezzanine Secured Claims.

(b)     *Allowance.*  Solely as part of and pursuant to the settlement of all disputes between the Debtors and the Secured Creditors as reflected in this consensual Plan, the Mezzanine Secured Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors in the aggregate principal amount of $36,000,000, inclusive of all accrued but unpaid interest, costs, fees, and expenses then outstanding under the Mezz Loan.  The Mezz Debt Holder shall not be required to file amended or supplemental proofs of Claim on account of Senior Secured Claims. For the avoidance of doubt, if this Plan is not confirmed or the Effective Date does not occur, the amount of the Allowed Mezzanine Secured Claims shall be subject to further proceedings and determination by the Bankruptcy Court or agreement of the Debtors and Mezz Debt Holder.

(c)     *Treatment.* Upon the Residential Unit Transfer  (to occur on the Effective Date), all of the Mezzanine Secured Claims are fully satisfied and discharged.

(d)     *Voting.* Class 2 is impaired. Holders of Allowed Mezzanine Secured Claims are entitled to vote to accept or reject the Plan.

4.4.    ***Class 3: Mezzanine Deficiency Claims.***

(a)    *Classification.* Class 3 consists of Mezzanine Deficiency Claims, if any.

(b)    *Allowance*.  Solely as part of and pursuant to the settlement of all disputes between the Debtors and the Secured Creditors as reflected in this consensual Plan, the Mezzanine Deficiency Claims, if any, are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors.  The Mezz Debt Holder shall not be required to file amended or supplemental proofs of Claim on account of Mezzanine Deficiency Claims, if any. For the avoidance of doubt, if this Plan is not confirmed or the Effective Date does not occur, the amount of the Allowed Mezzanine Deficiency Claims shall be subject to further proceedings and determination by the Bankruptcy Court or agreement of the Debtors and Mezz Debt Holder.

(c)    *Treatment***.** Upon the Residential Unit Transfer (to occur on the Effective Date), all of the Mezzanine Deficiency Claims, if any, are fully satisfied and discharged.

(d)    *Voting***.** Class 3 is impaired. Holders of Allowed Mezzanine Deficiency Claims, if any, are entitled to vote to accept or reject the Plan.

4.5.    ***Class 4: General Unsecured Claims.***

(a)    *Classification.* Class 4 consists of General Unsecured Claims.

(b)    *Allowance*.  All timely-filed General Unsecured Claims and General Unsecured Claims scheduled in the Debtors' bankruptcy schedules and not designated as contingent, unliquidated, or disputed shall be Allowed Claims and shall not be subject to any claim objection under the Plan.

(c)    *Treatment***.** Each holder of an Allowed General Unsecured Claim shall receive (i) Cash equal to 50% of the Allowed amount of such Claim on the later of (a) thirty (30) days after the Effective Date and (b) the date that is the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes an Allowed Claim (the "Initial GUC Distribution") and (ii) Cash equal to the remaining 50% of the Allowed amount of such Claim on or before December 31, 2024 (the "Final GUC Distribution"). The Initial GUC Distribution shall be funded from projected Cash on hand in Fee Owner's Cash Management Account, and the Final GUC Distribution (subject to section 5.1(c) of the Plan) shall be funded by (i) the Debtors, if the Balance of Payoff Amount is paid or (ii) the Secured Creditors or their designee, if the Balance of Payoff Amount is not paid by the Debtors or their designee.

(d)    *Voting***.** Class 4 is impaired. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.6.    ***Class 5: Interests***.

(a)    *Classification.* Class 5 consists of Interests.

18

(b)      *Allowance*.  All Interests scheduled in the Debtors' bankruptcy schedules shall be Allowed Interests and shall not be subject to any objection under the Plan.

(c)      *Treatment*. In consideration of the Affiliate Capital Contribution and other commitments being made under this Plan by or on behalf of the holders of the Allowed Interests in the Debtors, each such holder shall retain its Allowed Interests.

(d)      *Voting*. Class 5 is impaired. Holders of Allowed Interests are entitled to vote to accept or reject the Plan.

4.7.      ***Discharge of Secured Creditors' Claims***.

Upon the Residential Unit Transfer, $50,000,000 represents the aggregate amount of the Mezzanine Secured Claims, Mezzanine Deficiency Claims, if any, and a portion of the Senior Secured Claims being satisfied, discharged or assigned by the Debtors to, and assumed by, New Bloom Residential Holdco.

## ARTICLE V

## MEANS FOR IMPLEMENTATION

5.1.      ***Transactions Related to the Loans and the Project***

(a)      ***Modification of the Loans***

Upon the Residential Unit Transfer (which shall occur on the Effective Date) as set forth in section 5.1(b), the Mezzanine Secured Claims and the Mezzanine Deficiency Claim, if any, are fully satisfied and discharged.

Upon the Residential Unit Transfer, the total obligations outstanding under the Senior Loan shall be $60,000,000 (provided that the amount owed by the Debtors or Guarantors with respect to the Senior Secured Claims (including, without limitation, Substitute Senior Note B) shall not exceed the Balance of Payoff Amount), secured by liens which will continue to encumber the Residential Units and Retail Units as set forth in sections 4.2(c)(ii), 5.1(b) and 5.1(c) of the Plan.

Contemporaneously with the transfer of the Residential Units, Secured Creditors and Fee Owner will execute a Consolidation and Splitter Agreement (the "**Senior Loan Splitter Agreement**"), together with the documents identified therein, that restructures the Senior Loan (the "**Senior Loan Structuring Transaction**") by:

(i)      reconsolidating that certain Promissory Note A dated as of January 12, 2021 held by Mortgage Debt Holder as assignee under which Fee Owner is the borrower ("**Existing Senior Note A**") and that certain Promissory Note B dated as of January 12, 2021 held by Mortgage Debt Holder as assignee under which Fee Owner is the borrower ("**Existing Senior Note B**" and with Existing Senior Note A, the "**Existing Senior Notes**") into a new Consolidated, Amended and Restated Promissory Note in the restructured principal amount of $60,000,000 (the

19

"**Consolidated Senior Note**"), which Consolidated Senior Note shall substantially be in the form of the Existing Senior Notes;

(ii)     splitting the Consolidated Senior Note into two substitute notes, with one substitute note in the amount of $14,000,000 encumbering the Residential Units ("**Substitute Senior Note A**"), and a second substitute note in the amount of $46,000,000 encumbering the Retail Units ("**Substitute Senior Note B**" and with Substitute Senior Note A, the "**Substitute Senior Notes**"), which Substitute Senior Notes shall substantially be in the form of the Consolidated Senior Note; and

(iii)    splitting that certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of January 12, 2021 held by Mortgage Debt Holder as assignee under which Fee Owner is the borrower (the "**Existing Senior Mortgage**") into two mortgages: a substitute mortgage encumbering the Residential Units ("**Substitute Senior Mortgage A**"), and a second substitute mortgage encumbering the Retail Units (the "**Substitute Senior Mortgage B**" and with Substitute Senior Mortgage A, the "**Substitute Senior Mortgages**" and with the Senior Loan Splitter Agreement, the Substitute Senior Notes, and such other documents executed in connection with the Senior Loan Structuring Transaction, the "**Senior Loan Structuring Documents**"), which Substitute Senior Mortgages shall substantially be in the form of the Existing Senior Mortgage.

Each of the Debtors and Secured Creditors will reasonably cooperate in executing applicable documentation in connection with the recording of the Senior Loan Splitter Agreement, the Substitute Senior Mortgages, and any other related documents, affidavits or required filings, except that the Debtors shall not be required to execute any affidavit pursuant to Section 275 of the Real Property Law of the State of New York or to incur any additional cost, expense, liability or obligation (other than their attorneys' fees in reviewing and negotiating such documentation). The filing and recording of all such documents shall be exempt from filing and recording fees pursuant to section 1146(a) of the Bankruptcy Code and section 12.4 of this Plan.

(b)     *Transfer of Residential Units*

As of the Confirmation Date, 52 of the Project's residential units remain unsold as set forth on Schedule 5.1(b). On the Effective Date, Fee Owner shall execute and deliver to Mortgage Debt Holder the following documents transferring ownership of the Residential Units to New Bloom Residential Holdco in an "as is" condition (the "**Residential Unit Transfer**"): (1) a bargain and sale deed with covenants against grantor's acts (substantially in the form of the Unit Deed attached to the Offering Plan as Exhibit 7), subject to the permitted encumbrances listed on **Exhibit A** attached hereto and the liens or encumbrances created or filed by, on behalf of, or for the benefit of, any Secured Creditor in connection with the transactions contemplated under the Plan, including Substitute Senior Mortgage A (collectively, the "**Residential Units Permitted Encumbrances**"), (2) New York City and New York State transfer tax forms necessary for the transfer of the Residential Units, and (3) Fee Owner's organizational documents, consents or resolutions, and a customary title affidavit in form and substance reasonably satisfactory to Fee

20

Owner and reasonably required by New Bloom Residential Holdco's title company to issue an owner's title policy insuring title to the Residential Units to New Bloom Residential Holdco subject only to the Residential Units Permitted Encumbrances (collectively the "**Residential Unit Transfer Documents**"); *provided* that, in addition to execution of the previously identified Residential Unit Transfer Documents, Fee Owner shall reasonably cooperate with and provide or execute, as applicable, any additional documents or information reasonably required by New Bloom Residential Holdco's title company as a condition to issuing an owner's title policy with respect to the Residential Units to New Bloom Residential Holdco (the "**Residential Unit Transfer Ancillary Documents**"); *provided further* that if the Residential Unit Transfer Ancillary Documents are not delivered by Fee Owner within the later of five (5) Business Days after the Effective Date and ten (10) Business Days after the date on which Fee Owner receives a request from New Bloom Residential Holdco's title company for such Residential Unit Transfer Ancillary Documents, the Secured Creditors or their designee shall be entitled to file a notice with the Bankruptcy Court requesting that it enter an Order directing Fee Owner to provide such Residential Unit Transfer Ancillary Documents or authorizing the Secured Creditors or their designee to take all necessary actions on behalf of Fee Owner to satisfy such requests; *provided further* that the Debtors reserve the right to oppose such request in good faith solely on the basis that such request is unreasonable; *provided further* that any costs, fees or expenses incurred by the Secured Creditors in seeking such relief, if granted, shall be Administrative Claims payable by the Debtors or Third-Party Payors..

Except as expressly set forth in sections 5.3 and 10.6 of the Plan, upon completion of the Residential Unit Transfer, the Debtors and Guarantors shall be released from any and all obligations under or with respect to Substitute Senior Note A and Substitute Senior Mortgage A, including any guaranty of such obligations, and any and all obligations on account of the Residential Units under the Loan Documents and Senior Loan Structuring Documents; provided, however, Substitute Senior Mortgage A will continue to encumber the Residential Units transferred pursuant to the Plan, and New Bloom Residential Holdco shall be deemed to have, and shall have, assumed all debts and obligations under Substitute Senior Note A and Substitute Senior Mortgage A. Upon the Residential Unit Transfer, Mezzanine Debt Holder shall (i) discharge and release any and all liens encumbering any collateral for the Mezz Loan, (ii) execute and deliver to the Debtors any documents necessary for such discharge and release, and (iii) return any collateral for the Mezz Loan in Mezzanine Debt Holder's possession or control.

The Secured Creditors or their designee shall sweep and control all funds in the Cash Management Account and all Lease Proceeds to pay the operating expenses of the Project from and after the Effective Date, including, without limitation, the expense items identified in the Budget (as defined in the Final Cash Collateral Order) attached to the Final Cash Collateral Order as Exhibit 1, until the payment of the Balance of Payoff Amount, if any. Notwithstanding the foregoing, the Secured Creditors or their designee shall retain the balance of the Cash Management Account at the end of the Retail Closing Period. For the avoidance of doubt, to the extent an operating expense (including, but not limited to, property taxes) has accrued or becomes due prior to the expiration of the Retail Closing Period but has not yet been paid out of the Cash Management Account if and at the time the Debtors pay the Balance of the Payoff Amount, such expense shall be prorated based on the portion of such expense accruing during such period and such prorated

amount paid by the Secured Creditors out of the Cash Management Account (or other funds of the Secured Creditors) and the balance paid by the Debtors, and the Secured Creditors shall be entitled to retain the balance of the Cash Management Account after payment of all such expenses.

Upon the transfer of the Residential Units to the Secured Creditors or their designee pursuant to the Plan, the governance provisions set forth in **Exhibit B** attached hereto shall apply to the condominium at the Project, in addition to all other governance documents and provisions for the condominium not inconsistent with the provisions in Exhibit B. The Debtors shall provide the Secured Parties or their designee with an assignment of Declarant Rights pursuant to an Amendment to Declaration in form and substance reasonably acceptable to the Secured Creditors or their designee and Debtors ("**Amendment to Declaration**").  Any declarant rights to be retained by the Debtors shall be governed by the Amendment to Declaration. The Amendment to Declaration shall be recorded by Debtors contemporaneously with the transfer of the Residential Units.  Debtors will cooperate with the Secured Creditors or their designee in terminating existing utility accounts, which termination shall occur on or about the Effective Date; provided, that any charges accruing to the existing utility accounts with respect to the Residential Units or the Project for periods following the Effective Date shall be paid by the Secured Creditors from the Cash Management Account.

(c)      ***Treatment of Retail Units.***

On the Effective Date, the Escrowed Retail Transfer Documents for the Retail Units shall be delivered by Fee Owner to Escrowee and held in escrow by Escrowee pursuant to the Escrow Agreement.  Pursuant to the terms of the Plan, the Debtors shall be entitled to pay to the Secured Creditors the Balance of Payoff Amount in exchange for release of the Escrowed Retail Transfer Documents to the Debtors and satisfaction of the mortgage and release of pledged collateral with respect to the Retail Units.  Such payoff and release shall take place within 90 days from the Effective Date, which 90-day period may be extended for up to 30 days in order to satisfy any underwriting requirements of a non-affiliated lender refinancing the Retail Units, but in no event shall such period extend beyond December 31, 2024 (as may be extended, the "**Retail Closing Period**"); *provided, however*, that any such extension of the 90-day period may only occur if the Debtors have provided to the Secured Creditors prior to expiration of the 90-day period, the following: (a) an executed term sheet issued by such lender, (b) either a wire confirmation or an email from the lender evidencing or confirming that the Debtors have paid a non-refundable deposit to such lender for the term sheet and due diligence/underwriting process, (c) copies of bank statements evidencing any necessary equity funding being held in domestic accounts in the U.S. and (d) a then current copy of such lender's business and legal diligence checklist (which shall demonstrate the current status of the checklist items); ***provided further, however,*** that if a significant casualty event occurs to the Retail Units, such term sheet must be re-dated or re-issued to reflect that it is in effect post-casualty event; ***provided further, however,*** that if the Retail Closing Period is set to expire after December 20, 2024, and has not expired pursuant to the Plan as of December 20, 2024, the Debtors shall make the Final GUC Distribution so as to be received by each holder of an Allowed General Unsecured Claim by December 31, 2024, pursuant to section 4.5(c) of the Plan; ***provided further, however,*** that if the Debtors fail to make payment of the Balance of Payoff Amount prior to expiration of the Retail Closing Period in accordance with the

Plan, the Secured Creditors shall within ten (10) Business Days following the Retail Unit Transfer reimburse the Debtors any amount of the Final GUC Distribution paid by the Debtors pursuant to the Plan.

During the Retail Closing Period, the Debtors shall retain ownership of the Retail Units. In order for the Debtors or their designee to retain ownership of the Retail Units after the Retail Closing Period, the Debtors or their designee must pay to the Secured Creditors or their designee the Balance of Payoff Amount before expiration of the Retail Closing Period. Simultaneously with the payment of the Balance of Payoff Amount, the Secured Creditors shall release, discharge, terminate, and remove any liens or encumbrances created or filed by or on behalf of either of the Secured Creditors upon or against the Retail Units, and Escrowee shall release the Escrowed Retail Transfer Documents to the Debtors or their designee. Upon payment of the Balance of Payoff Amount, the Secured Creditors or their designee shall no longer be entitled to the Lease Proceeds, and the Debtors or their designee may direct the payment by Rental Unit tenants of Lease Proceeds accruing for all periods following payment of the Balance of Payoff Amount to another account of the Debtors' or their designee's choosing. Any Lease Proceeds received by the Secured Creditors or their designee accruing for any period following payment of the Balance of Payoff Amount shall be transferred to the Debtors or their designee within ten (10) Business Days of receipt. For the avoidance of doubt, the Debtors shall be authorized under this Plan to form a new entity to serve as their designee to pay the Balance of Payoff Amount and to receive an assignment from Fee Owner of title to the Retail Units concurrently with the payment of the Balance of Payoff Amount.

If the Debtors fail to pay the Balance of Payoff Amount prior to the expiration of the Retail Closing Period, then upon expiration of the Retail Closing Period, the Escrowed Retail Transfer Documents shall be released from escrow by Escrowee to New Bloom Retail Holdco, dated as of the first day following the expiration of the Retail Closing Period (the "**Retail Unit Transfer**"); *provided* that the foregoing identified Escrowed Retail Transfer Documents and the release thereof shall not preclude New Bloom Retail Holdco's title company from requiring other documents or information from Fee Owner reasonably necessary to issue an owner's title policy with respect to the Retail Units to New Bloom Retail Holdco (the "**Retail Unit Transfer Ancillary Documents**") and Fee Owner shall reasonably cooperate with any such request.

Upon the Secured Creditors' determination that (a) the Retail Closing Period has expired without Debtors' payment in full in cash of the Balance of Payoff Amount or agreement to release the Escrowed Retail Transfer Documents, the Secured Creditors or their designee shall be entitled to file a notice with the Bankruptcy Court requesting that it enter an Order finding that the Debtors failed to timely make the Balance of Payoff Amount and that the Escrowee is authorized to release the Escrowed Retail Transfer Documents to New Bloom Retail Holdco; *provided* that the Debtors reserve their rights to oppose such request in good faith solely on the bases that: (i) the Retail Closing Period has not expired; (ii) the Balance of Payoff Amount was paid to the Secured Creditors prior to the expiration of the Retail Closing Period; or (iii) acts or omissions by the Secured Creditors, their affiliates, or designees during the Retail Closing Period caused the failure of Fee Owner to be able to refinance the Retail Units and pay the Balance of Payoff Amount prior to expiration of the Retail Closing Period; *provided further* that the foregoing is not intended to, and shall not, establish any affirmative obligation of the Secured Creditors to facilitate the Debtors'

23

efforts to obtain financing to make the Balance of Payoff Amount payment other than the obligations described in paragraph 2 of Exhibit B to the Plan (Management Terms for Condominium), or (b) the Retail Unit Transfer Ancillary Documents are not delivered by Fee Owner within the later of five (5) Business Days after the expiration of the Retail Closing Period and ten (10) Business Days after the date on which Fee Owner receives a request from New Bloom Retail Holdco's title company for such Retail Unit Transfer Ancillary Documents, the Secured Creditors or their designee shall be entitled to file a notice with the Bankruptcy Court requesting that it enter an Order directing Fee Owner to provide the Retail Unit Transfer Ancillary Documents and authorizing the Secured Creditors or their designee to take all necessary actions on behalf of Fee Owner to satisfy such requests; *provided*, that the Debtors reserve their rights to oppose such request based solely on a good faith belief that such request is unreasonable; *provided further*, in each case, that any costs, fees or expenses incurred by the Secured Creditors in seeking such relief, if granted, shall be Administrative Claims payable the Debtors or Third-Party Payors.

Upon release of the Escrowed Retail Transfer Documents to New Bloom Retail Holdco, the Debtors and Guarantors shall be deemed to have been released, and shall be released, from any and all obligations under or with respect to Substitute Senior Note B and Substitute Senior Mortgage B, including any guaranty of such obligations, and any and all obligations under the Loan Documents and Senior Loan Structuring Documents; *provided*, *however*, Substitute Senior Mortgage B shall continue to encumber the Retail Units and New Bloom Retail Holdco shall be deemed to have, and shall have, assumed all debts and obligations under Substitute Senior Note B and Substitute Senior Mortgage B.

(d)    *Abandonment of Personal Property.*

Upon the Residential Unit Transfer, Fee Owner shall be deemed to have, and shall have, abandoned its ownership interest in any personal property located within the Residential Units pursuant to section 554(a) of the Bankruptcy Code.

5.2.    *Effectuating Documents; Further Transactions*.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects in accordance with and subject to the terms hereof. On or before the Effective Date, the authorized officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Plan or otherwise necessary or desirable to effectuate the transactions contemplated by the Plan in the name of and on behalf of the Debtors. The authorizations and approvals contemplated in the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

5.3.    *Conflict Between Plan and Loan Documents or Senior Loan Structuring Documents; Termination of Forbearance Agreement and State Court Litigation.*

(a)    In the event of any conflict between the terms of the Plan, on the one hand, and the Loan Documents, the Forbearance Agreement, or the Senior Loan Structuring Documents, on the other hand, the terms of the Plan shall govern and control.

24

(b)    For avoidance of doubt, any claim by any of the Secured Creditors against the Debtors or Guarantors arising from any alleged breach during the Retail Closing Period of any term, covenant, condition or obligation set forth in the Loan Documents or the Senior Loan Structuring Documents or otherwise as relates to the Retail Units shall be deemed to be released by and upon the payment of the Balance of Payoff Amount or the Retail Unit Transfer, as provided in and pursuant to Articles IV and V of the Plan, *except* for (x) any such claim involving physical damage to the Retail Units occurring after the Confirmation Date and prior to the Retail Unit Transfer (if applicable), if and to the extent such damage resulted from the willful misconduct or gross negligence of Fee Owner, or (y) any such claim for actual damages (excluding indirect, consequential, special, punitive and exemplary damages except to the extent actually incurred by the Secured Creditors as a result of claims from unaffiliated third parties) (any claim under (x) or (y), a "**Retail Closing Period Damage Claim**"); *provided* that (A) the Secured Creditors shall not have any Retail Closing Period Damage Claim under section 5.3(b)(x) above if the Debtors pay the Balance of the Payoff Amount, and (B) no such Retail Closing Period Damage Claim shall arise on account of the Debtors' or the Guarantors' failure to comply, and the Debtors and Guarantors shall have no obligation to comply, with the following:

(i)    financial covenants, if any, set forth in the Loan Documents;

(ii)    financial payment obligations related to debt service or reserve funding set forth in the Loan Documents; or

(iii)    financial reporting covenants set forth in Section 6.3 of the Senior Loan Agreement; *provided, however,* that Fee Owner shall be required to deliver to Mortgage Debt Holder copies of any and all notices or correspondence received from, or delivered to, any Retail Unit tenants, government entities or authorities, taxing authorities, insurers, or other material notices or correspondence related to the Retail Units (including any notices or correspondence related to any casualty or condemnation event).

(c)    For the avoidance of doubt, any ordinary-course repairs or maintenance of the Retail Units during the Retail Closing Period required to be made in accordance with the applicable lease or leases and the Loan Documents shall be made by Fee Owner or its agent, and Fee Owner shall be entitled to draw from the Cash Management Account for all such operating expenses.

(d)    Any Retail Closing Period Damage Claim existing from and after the expiration of the Retail Closing Period shall be deemed waived and released if no litigation to assert such claim has been commenced within one (1) year after expiration of the Retail Closing Period.

(e)    Upon the Effective Date, (i) the escrow currently held by Reed Smith LLP pursuant to the Forbearance Escrow Agreement shall be dissolved and all documents held in escrow pursuant to such Forbearance Escrow Agreement shall be returned to the Debtors and the Forbearance Escrow Agreement, (ii) the A&R Operating Agreement (as defined in the Forbearance Agreement) and the Strict Foreclosure Document (as defined in the Forbearance

Escrow Agreement) shall be deemed null and void, and (iii) the Forbearance Agreement shall be deemed null and void, except that payments to the Secured Creditors made thereunder shall not be discredited.

(f)    Upon the Effective Date, the Debtors and the Secured Creditors shall execute a stipulation of discontinuance and dismissal of the State Court Action with prejudice.

5.4.    ***Certain Insurance and Casualty Matters***

(a)    Notwithstanding any provisions to the contrary contained in the Loan Documents or the Senior Loan Structuring Documents, in the event there is a casualty or condemnation event affecting or with respect either the Residential Units or the Retail Units the Debtors and the Guarantors obligations to restore any of the Residential Units or Retail Units shall be governed by the provisions set forth in this section 5.4.

(b)    In the event there is a casualty or condemnation event affecting or with respect to the Residential Units prior to or after the Residential Unit Transfer, any corresponding insurance proceeds recovered or condemnation award shall belong to Mortgage Debt Holder or New Bloom Residential Holdco, as appropriate.  The Debtors shall, and hereby do, assign any of their rights to such insurance proceeds or condemnation award, as applicable, to Mortgage Debt Holder and, alternatively, New Bloom Residential Holdco, as appropriate.

(c)

(i)    In the event there is a casualty or condemnation event affecting or with respect to the Retail Units prior to expiration of the Retail Closing Period, Fee Owner and Mortgage Debt Holder shall cooperate in the Debtors' performance of any immediate steps to repair or remedy the situation as may be required of landlord under the terms of any applicable Retail Unit lease(s) or by applicable health and safety laws (the "**Remedial Actions**"), subject to the terms of this section 5.4 and to ensure such actions are appropriate and being performed in a workman-like manner and within the time frames required under applicable Retail Unit lease(s).

(ii)    Fee Owner shall provide prompt written notice to Mortgage Debt Holder whether it will undertake the Remedial Actions during the Retail Closing Period. If it elects to not undertake Remedial Actions, the Retail Closing Period shall immediately be deemed expired and trigger a Retail Unit Transfer.

(iii)    Solely to the extent the Debtors reasonably believe that any repair to the Retail Units arising out the of the casualty or condemnation is immediately required under the terms of any applicable Retail Unit lease(s) or by applicable health and safety laws, prior to receiving approval of Mortgage Debt Holder, the Debtors shall be permitted to take such Remedial Actions as they deem reasonably necessary at such time, upon giving notice to Mortgage Debt Holder.

26

(iv)    For the avoidance of doubt, any Remedial Actions taken by Fee Owner shall not create an obligation to continue such work after the Retail Closing Period if the Debtors do not make the Balance of Payoff Amount payment.

(v)    Any insurance proceeds related to any such casualty or condemnation shall be held in the Cash Management Account to be used to fund such repairs and inure to the owner of the Retail Units at any moment in time. In the absence of sufficient insurance proceeds, the Mortgage Debt Holder shall disburse to the Debtors amounts in reimbursement therefor from the Cash Management Account up to an amount not to exceed $100,000, which amounts shall be repaid from any insurance proceeds or otherwise added to the Balance of Payoff Amount upon the Debtors' payment of the Balance of Payoff Amount, if any.

(d)    For the avoidance of doubt, in no event shall the occurrence of a casualty or condemnation event or the status of any Remedial Action (whether or not commenced or completed) cause, or serve as grounds for, an extension of the Retail Closing Period and such Retail Closing Period shall not be extended on the basis thereof.

(e)    For the avoidance of doubt, any insurance proceeds or condemnation award, as applicable, pertaining to insurance coverage maintained by the Condominium Board with respect to the Project pursuant to the terms of the Condominium Documents shall be paid, held, used and otherwise distributed in accordance with the terms of the Condominium Documents; and

(f)    Upon the Debtors' assignment of insurance proceeds or condemnation award, as applicable, if and as required under this section 5.4, the Debtors and Guarantors shall have no further obligations or liabilities with respect any casualty or condemnation event affecting or with respect to the Residential Units or the Retail Units, as applicable, and the Secured Creditors waive any right to claim a Casualty Event of Default as defined in the Loan Documents.

5.5.    ***Certain Tax Matters***. For U.S. federal income tax purposes, and comparable state and local tax purposes (as applicable):

(a)    The Debtors shall implement the Plan in a manner such that they shall continue to be treated as disregarded entities through the implementation of the Plan on the Effective Date and shall not take any action that would cause the Debtors to be treated as an association taxable as a corporation at any relevant time prior to the final discharge of Debtors' obligations under the Substitute Senior Notes.

(b)    The Debtors and all holders of Allowed Claims shall report consistent with this section 5.5 for all income tax purposes and shall: (i) use commercially reasonable efforts to cause consistent reporting therewith by others; and (ii) not join in, encourage, and/or support inconsistent reporting therewith by others.

## ARTICLE VI

## DISTRIBUTIONS

6.1.   ***Distributions Generally***.

The Initial GUC Distribution and the Final GUC Distribution shall be made to the appropriate holders of Allowed Class 4 Claims in accordance with the terms of the Plan by the Secured Creditors or their designee, Fee Owner, Holdco, or a designee of Fee Owner or Holdco, as applicable.

6.2.   ***Claims Record Date***.

On the Confirmation Date, the Debtors' records of the holders of  Claims and Interests shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder for purposes of the Plan, and there shall be no further changes in the record holders of any such Claims or Interests; provided, however, that the foregoing shall not preclude the Debtors from asserting and prosecuting any timely objections to Claims or Interests of the record holders pursuant to the Plan.

6.3.   ***Post-petition Interest on Claims***.

Except as otherwise required under the Bankruptcy Code or orders of the Court, or as otherwise provided in the Plan, interest shall not accrue or be paid on any Allowed Claims against the Debtors on or after the Petition Date.

6.4.   ***Unclaimed Property***.

Undeliverable distributions shall remain in the possession of the Secured Creditors or their designee, Fee Owner, Holdco, or a designee of Fee Owner or Holdco, as applicable, until such time as a distribution becomes deliverable or a holder accepts distribution. Such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) and forfeited at the expiration of one hundred and twenty (120) days from the applicable date of distribution, and the obligation to make a distribution to the holder of the Allowed Claim shall be deemed discharged and the holder's claim of entitlement to the distribution forever barred, notwithstanding any federal or state escheat laws to the contrary. After such date, all unclaimed property or interest in such property shall revert to and vest in the Secured Creditors or their designee, Fee Owner, Holdco, or a designee of Fee Owner or Holdco, as applicable. Requests for re-issuance of any check prior to the expiration of the one hundred and twenty (120) day period from the date of issuance may be made to the Secured Creditors or their designee, Fee Owner, Holdco, or a designee of Fee Owner or Holdco, as applicable, by the holder of the Allowed Claim to whom such check was originally issued. Nothing herein shall require the Secured Creditors or their designee, Fee Owner, Holdco, or a designee of Fee Owner or Holdco, as applicable, to attempt to locate holders of undeliverable distributions.

6.5.    *Manner of Payment Under Plan*.

Except as otherwise specifically provided in the Plan, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or pursuant to customary practices.

6.6.    *Setoff and Recoupment*.

With respect to any distribution to be made on account of an Allowed Class 4 Claim, the Debtors, or their designees may, but shall not be required to, set off or recoup against such distribution any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors may have against the holder of such Allowed Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to do so nor the allowance of any Allowed Claim hereunder shall constitute a waiver or release by the Debtors or their successors, of any claims, rights, or Causes of Action that the Debtors, or their successors or assigns may possess against the holder of such Allowed Claim.

6.7.    *No Distribution in Excess of Amount of Allowed Claim*.

No holder of an Allowed Class 4 Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

6.8.    *Distributions Free and Clear*.

Any distributions under the Plan shall be free and clear of all Liens, Claims, and encumbrances, and no Entity, including the Debtors, shall have any interest, legal, beneficial, or otherwise, in any amounts transferred pursuant to the Plan, other than the transferee and its designee, if applicable.

6.9.    *Reporting Requirements*.

Any party entitled to receive any property as a distribution under the Plan shall, upon request of the Debtors, deliver to the Debtors an appropriate Internal Revenue Service Form W-9 or (if the payee is a foreign Entity) Form W-8, and any other reasonably requested tax information. If such request is made by the Debtors and the holder fails to comply before the date that is one hundred and eighty (180) days after the request is made, the amount of any such distribution shall irrevocably revert to Fee Owner or Holdco, as the case may be, and any Claim on account of such distribution shall be discharged and forever barred from assertion against the Debtors or their property.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1.    *Objections to Claims*.

Nothing under the Plan shall affect the Debtors' claims, Causes of Action, rights, or defenses in respect of any Class 4 Claims, including all rights in respect of legal and equitable

defenses to or setoffs or recoupment against any such Claims. Any objections to Class 4 Claims shall be served and filed by the Debtors on or before the later of: (a) thirty (30) calendar days after the Effective Date; and (b) on such other date as ordered by the Bankruptcy Court for cause.

7.2.    *Resolution of Disputed Administrative Expenses and Disputed Claims*.

On and after the Effective Date, except as otherwise provided herein, all Claims that are not then Allowed will be satisfied, disputed, pursued, or otherwise reconciled in accordance with the Plan and may be compromised, settled, or otherwise resolved without further approval of the Bankruptcy Court.

7.3.    *Payments and Distributions with Respect to Disputed Claims*.

Except as otherwise provided in the Plan, if any portion of a Class 4 Claim is a Disputed Claim, the Secured Creditors or their designee, Fee Owner, Holdco, or a designee of Fee Owner or Holdco, as applicable, shall not be required to make any payment or distribution provided hereunder on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.4.    *Distributions After Allowance*.

After a Disputed Class 4 Claim becomes an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in the Plan. Such distributions shall be made in accordance with Article VI of the Plan.

7.5.    *Estimation of Claims*.

The Debtors may: (a) determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court; and (b) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim; provided, however, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

7.6.    *Claim Resolution Procedures Cumulative*.

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Class 4 Claims may be estimated and subsequently

settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.7. *Insured Claims*.

If any portion of an Allowed Class 4 Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Court.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1. *General Treatment*.

(a)    Subject to section 8.4 of the Plan, (a) all executory contracts or unexpired leases in effect as of the date of the Residential Unit Transfer that pertain solely to the operation and management of the Residential Units and/or the common areas shall be deemed assumed by the Debtors and assigned to the Secured Creditors or their designee, or, if designated by the Secured Creditors in writing to the Debtors prior to the Effective Date, rejected by the Debtors within ten (10) Business Days following the Effective Date by filing a notice of rejection with the Bankruptcy Court (and failure to do so shall be deemed an assumption), and (b) with respect to all other executory contracts and unexpired leases, if (i) the Debtors duly pay the Balance of Payoff Amount, they shall be assumed or rejected by the Debtors within ten (10) Business Days following payment of the Balance of Payoff Amount by filing a Notice with the Bankruptcy Court of assumption or rejection (and failure to do so shall be deemed an assumption), and (ii) if the Debtors fail to pay the Balance of Payoff Amount, they shall be assumed by the Debtors and assigned to the Secured Creditors or their designee or, if designated by the Secured Creditors in writing to the Debtors prior to the Retail Closing Period, rejected by the Debtors within ten (10) Business Days following expiration of the Retail Closing Period by filing a Notice with the Bankruptcy Court of such assumption and assignment or rejection (and failure to do so shall be deemed an assumption); provided, however, that any rejection damage claim that may arise will be the sole responsibility of the party designating the contract or lease for rejection. To the best of their knowledge, the Debtors do not believe they are in arrears with respect to any payment obligation of the Debtors under any of their executory contracts and unexpired leases. Accordingly, unless a proof of claim was timely filed by the non-Debtor party to any such contract or lease asserting a cure amount, and subject to the right of the applicable Debtor to object to any such Claim, the Debtors' assumption or assumption and assignment of executory contracts and unexpired leases under the Plan shall not require any cure payment under section 365 of the Bankruptcy Code with respect to the period through the Effective Date of the Plan to effectuate such assumption. For the avoidance of doubt, as of the Effective Date, Fee Owner assumes all unexpired leases for the Retail Units.

31

(b)      Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption (and, if applicable, assignment) or rejection of executory contracts and unexpired leases provided for in the Plan pursuant to Bankruptcy Code sections 365(a) and 1123 and a determination by the Bankruptcy Court that the Debtors have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the Debtors, their designee, or their assignee in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

8.2.    *Rejection Damages Claims*.

Subject to section 8.4 of the Plan, in the event that the rejection of an executory contract or unexpired lease hereunder by the Debtors results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Secured Creditors or their designee as the case may be (depending on which party has designated the contract or lease for rejection, per section 8.1(a) of the Plan), or their respective properties or interests in property, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Secured Creditors no later than thirty (30) calendar days after the effective date of rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims and paid the Initial GUC Distribution by the Secured Creditors and the Final GUC Distribution by the Debtors or the Secured Creditors in accordance with section 4.5(c) of the Plan.

8.3.    *Insurance Policies*.

On the Effective Date: (i) all insurance policies issued or providing coverage to the Debtors shall be treated as executory contracts in accordance with section 8.1 of the Plan; (ii) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (iii) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (a) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court: (I) workers' compensation claims; (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim; and (III) all costs in relation to each of the foregoing; and (c) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies.  To the extent such policies pertain solely to the Condominium and associated common areas and are assignable, they shall be assigned to the Secured Creditors or their designee as of the date of the Residential Unit Transfer. To the extent assignable, all policies pertaining solely to the Retail Units shall be assigned to the Secured Creditors or their designee as

32

of the expiration of the Retail Closing Period, if the Debtors do not pay the Balance of Payoff Amount.

8.4.    ***Douglas Elliman Brokerage Agreement***

(a)    As of the Confirmation Date, Fee Owner's brokerage agreement ("***Brokerage Agreement***") with Douglas Elliman ("***Elliman***") shall be deemed rejected.

(b)    In accordance with the Brokerage Agreement, the Debtors shall provide to the Secured Creditors Elliman's list of procured prospective purchasers within ten (10) Business Days following the Confirmation Date.

(c)    Notwithstanding rejection of the Brokerage Agreement, the Secured Creditors and their designee, if any, shall comply with the obligations of Fee Owner under section 12(b) of the Brokerage Agreement, including the obligation post-termination to report to Elliman regarding Residential Unit sales.

(d)    Any brokerage fees alleged by Elliman to be owed to Elliman for sales of Residential Units prior to the Confirmation Date and any other amounts alleged by Elliman to be owed for actions taken prior to or after the Confirmation Date by the Debtors or Elliman at the direction of the Debtors (including, without limitation, the sale of any of the Residential Units prior to the Confirmation Date to purchasers on the list of prospective purchasers provided by Elliman in accordance with section 12(b) of the Brokerage Agreement) shall be the sole responsibility of the Debtors.

(e)    Any brokerage fees alleged by Elliman to be owed to Elliman for sales of Residential Units after the Confirmation Date and any other amounts alleged by Elliman to be owed for actions taken after the Effective Date by the Secured Creditors or their designee, if any, or Elliman at the direction of the Secured Creditors or their designee (including, without limitation, the sale of any of the Residential Units after the Confirmation Date to purchasers on the list of prospective purchasers provided by Elliman in accordance with section 12(b) of the Brokerage Agreement) shall be the sole responsibility of the Secured Creditors and their designee, if any.

8.5.    ***Modifications, Amendments, Supplements, Restatements, or Other Agreements***.

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

8.6.    ***Reservation of Rights***.

Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors under any executory or non-executory contract or any unexpired or expired lease.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## OF PLAN AND EFFECTIVE DATE

9.1.    ***Conditions Precedent to Confirmation of Plan***.

The following are conditions precedent to confirmation of the Plan:

(a)    the Disclosure Statement shall have been approved by the Bankruptcy Court; and

(b)    all Definitive Documents have been approved in form and substance by the Debtors and the Secured Creditors.

9.2.    ***Conditions Precedent to Effective Date***.

The following are conditions precedent to the Effective Date of the Plan:

(a)    the Confirmation Order shall have been entered and, subject to any stay, shall otherwise be in full force and effect;

(b)    the Confirmation Order shall have become a Final Order;

(c)    all Definitive Documents contemplated to be executed as of the Effective Date shall have been executed by all parties thereto;

(d)    the Debtors, on behalf of themselves, their affiliates, agents, assigns, and Estates, and the Secured Creditors, on behalf of themselves, their affiliates, agents, and assigns shall provide to each other a written acknowledgement that as of the Effective Date they are not aware of any Released Claims against one another arising from willful misconduct; and

(e)    the Escrowed Retail Transfer Documents shall be delivered by Fee Owner to Escrowee and held in escrow by Escrowee pursuant to the Escrow Agreement.

9.3.    ***Waiver of Condition Precedent***.

Any condition precedent in section 9.2 of the Plan may be waived, in whole or in part, in writing by the Debtors and the Secured Creditors jointly. Without limiting the foregoing, if all objections to the Plan have been resolved consensually or withdrawn as of the Confirmation Date,

the Confirmation Order shall be deemed a Final Order as of the Confirmation Date for purposes of section 9.2(b) of the Plan.

9.4.    *Effect of Failure of a Condition*.

If the conditions listed in section 9.2 of the Plan are not satisfied, the Plan shall not become effective and shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any claims by or Claims against the Debtors, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Entity.

## ARTICLE X

## EFFECT OF CONFIRMATION OF PLAN

10.1.    *Vesting of Assets*.

On the Effective Date, pursuant to Bankruptcy Code sections 1141(b) and (c), any and all property of the Debtors' Estates shall vest in the Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan and the Confirmation Order. On and after the Effective Date, the Debtors may take any action, including, without limitation, the assertion of any Causes of Action; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether or not in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.2.    *Binding Effect*.

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders are: (a) Impaired or Unimpaired under the Plan; (b) presumed to accept or deemed to reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) will receive any distribution under the Plan.

10.3.    *Discharge of Claims and Termination of Interests*.

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by Bankruptcy Code section 1141, of and from any and all Claims, rights, and liabilities of the Debtors that arose prior to the Effective Date. Upon the Effective Date, all such Entities

35

shall be forever precluded and enjoined, pursuant to Bankruptcy Code section 524, from prosecuting or asserting against the Debtors any such discharged Claim against the Debtors.

10.4.    *Term of Injunctions or Stays*.

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

10.5.    *Injunction*.

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or in relation to any Claim extinguished, discharged, or released pursuant to the Plan; provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as expressly agreed to by the Debtors and a holder of a Claim, all Entities who have held, hold, or may hold a Claim and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims that will be or are extinguished, discharged, or released pursuant to the Plan from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors or the property of any of the Debtors; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the property of any of the Debtors; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, or the property of any of the Debtors; (iv) asserting any right of setoff, directly or indirectly, against any obligation owing to the Debtors, or against property or interests in property of any of the Debtors, except as provided in the Plan; (v) acting or proceeding in any manner that does not conform to or comply with the provisions of the Plan; and (vi) exercising any remedies under the Loan Documents or the Definitive Documents.**

10.6.    *Releases*.

(a)    **Mutual Releases of Debtors and Secured Creditors.**

As of the Effective Date, but subject to section 10.6(b) of the Plan and except for the rights that remain in effect from and after the Effective Date to enforce: (1) the Plan; and (2) the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the services rendered by the Released Parties to formulate and facilitate confirmation and consummation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed released and discharged, to the maximum extent permitted by law, by the Debtors, their Estates, the Secured Creditors, and each of the other Released Parties, on behalf of themselves and their respective successors, assigns, and representatives, and any and all Persons that may purport to assert any Cause of Action or cause of action derivatively, by, through or on behalf of any of the Released Parties, from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, causes of action, remedies, losses, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any of the Released Parties would have been legally entitled to assert in their own right or on behalf of the holder of any Claim or Interest or other Person against another Released Party, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Project, the Chapter 11 Cases, the transfer, purchase, or sale of any asset of the Debtors, the business or contractual arrangements between any of the Debtors and any Released Party, including, but not limited to the Loans, Loan Documents, and the Forbearance Agreement, the restructuring of any Claim or Interest during the Chapter 11 Cases, the Disclosure Statement, the Plan the Definitive Documents, or any related agreements, instruments, and other documents, and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission (collectively, "Released Claims"), in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, however, that nothing in this section 10.6(a) shall be construed to release the Released Parties from (X) such Released Claims to the extent arising from willful misconduct (subject to section 9.2(d) of the Plan) or fraud, in each case as determined by a Final Order or (Y) subject to section 5.3 of the Plan, any Retail Closing Period Damage Claim; provided further, however, that the Debtors and Guarantors ("Indemnitors") shall indemnify the Secured Creditors for costs and liabilities incurred by the Secured Creditors arising from claims or causes of action asserted by third-party purchasers of residential units based on: (a) allegations of any inaccurate or incomplete disclosure or misrepresentations made by Fee Owner (the "Original Sponsor") in the Offering Plan, (b) allegations of construction defects or incomplete work undertaken by or on behalf of the Original Sponsor, and (c) failure of the Original Sponsor to comply with the provisions of the Offering Plan, excluding any amendments to the Offering Plan filed by the Secured Creditors or their designee as Successor-Sponsor (collectively, the "Original Sponsor Claims"); provided that the Secured Creditors file the "Successor-Sponsor

37

Amendment" (as defined in the Management Terms for Condominium in Exhibit B) to the Offering Plan. Indemnitors shall have the right to select counsel and control the defense of Original Sponsor Claims, including, without limitation, any settlements. The Released Parties shall be permanently enjoined from prosecuting any of the foregoing claims or Causes of Action released under this section 10.6(a) against each of the other Released Parties.

(b)    Notwithstanding any provision in the Plan or the Confirmation Order to the contrary, the Releases in section 10.6(a) of the Plan shall not apply to any Released Claims based on or relating to, or in any manner arising from, the Retail Units, including Substitute Senior Note B, and Substitute Senior Mortgage B unless and until, either completion of the Retail Unit Transfer or the payment of the Balance of Payoff Amount, in each case in accordance with the Plan, at which time Debtors shall be released from any and all Released Claims that any of the Released Parties have or may have through the date of the Retail Unit Transfer or payment of the Balance of Payoff Amount, as applicable, including, but not limited to, the Allowed Senior Secured Claim, Allowed Mezzanine Secured Claim, and Allowed Mezzanine Deficiency Claim, if any, Substitute Senior Note B, and Substitute Senior Mortgage B; provided, however, that such releases shall not release the Debtors from (i) subject to section 5.3 of the Plan, Retail Closing Period Damage Claims, and (ii) the indemnification obligations under section 10.6(a) above with respect to Original Sponsor Claims.

(c)    Notwithstanding anything to the contrary herein, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

(d)    **Guarantor Releases**.

The Guarantors under the Loans and Loan Documents shall be deemed, and shall be, discharged and released of any liability with respect to the Allowed Senior Secured Claims, the Allowed Mezzanine Secured Claim, and, if any, the Allowed Mezzanine Deficiency Claim, the Loans, Loan Documents, Forbearance Agreement, and Definitive Documents, and any obligations under the guarantees given in connection with the foregoing, and any other liabilities for which the Debtors are released pursuant to section 10.6(a) and section 10.6(b) of the Plan solely to the extent the Debtors are released pursuant to the Plan, including pursuant to sections 10.6(a) and (b) of the Plan; provided, however, that the Guarantors shall not be released from the obligations under sections 5.3 or 10.6(a) of the Plan with respect to Retail Closing Period Damage Claims or the Original Sponsor Claims.

10.7.    *Exculpation*.

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date and up to and including the Effective Date in connection with or arising out of the filing and administration of the

**Chapter 11 Cases, the Disclosure Statement and the Plan, including the formulation, negotiation, preparation, dissemination, solicitation, confirmation, funding, consummation, implementation, and administration thereof or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, in each case as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

10.8.    *Retention of Causes of Action/Reservation of Rights*.

Except as otherwise provided in sections 10.5, 10.6, and 10.7 of the Plan, or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of their Estates in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, all of which are preserved to the Debtors and may be pursued or abandoned by the Debtors in their sole discretion. Except as otherwise provided in the Plan, the Debtors shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any claim of the Debtors or Claim against the Debtors may be asserted by the Debtors after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1.    *Retention of Jurisdiction*.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes, subject to the right of the Debtors to resolve any such matters post-Effective Date without Court approval, as provided in the Plan:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases,

controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any counterclaims of the Debtors and their Estates;

(e)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)    to issue injunctions, enter, and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all Fee Claims;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing, including without limitation, entering an Order finding that the Debtors failed to make payment of the Balance of Payoff Amount satisfying conditions for the Escrowee to release the Escrowed Retail Transfer Documents to the Secured Creditors or their designee in accordance with the Plan;

(j)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)    to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146 (including any Disputed Claims for taxes and any requests for expedited determinations under Bankruptcy Code section 505(b));

(l)    to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, exculpations, and injunctions issued thereunder;

(m)    to resolve disputes concerning Disputed Claims or the administration thereof;

40

(n)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)     to enter a final decree closing the Chapter 11 Cases;

(p)     to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, or any deadline for responding or objection to a Cure Amount, in each case, for any purpose;

(q)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory, including, without limitation, Avoidance Actions; and

(r)     to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in Bankruptcy Code sections 502 or 503, other than defenses or limits that are asserted under non-bankruptcy law pursuant to Bankruptcy Code section 502(b)(1).

## 11.2.  *Courts of Competent Jurisdiction*.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS.

## 12.1.  *Payment of Statutory Fees*.

On the Effective Date and thereafter as may be required, the Debtors shall make all required filings and pay all fees incurred pursuant to section 1930 of chapter 123 of title 28 of the United States Code (including any such fees on account of any distributions under the Plan on and after the Effective Date), together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtors' cases, until such time as a final decree is entered closing each of the Debtors' respective Chapter 11 Cases, a Final Order converting the Debtors' cases to cases under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtors' cases is entered; provided, however, that such fees accruing postpetition prior to the Effective Date shall be paid from the Cash Management Account under the control of the Secured Creditors or their designee; provided further, however, that the Secured Creditors and any designee of the Secured Creditors shall cooperate in providing to the Debtors all required information for preparation of quarterly post-confirmation operating reports to the U.S. Trustee. Notwithstanding the foregoing, the Plan is contingent on the absence of any fee being generated and owed pursuant to 28 U.S.C. section 1930(a)(6)(B) as a result of the release of the Secured Creditors' collateral to the Secured Creditors pursuant to the Residential Unit Transfer, and a specific ruling on this point by the Bankruptcy

41

Court will be proposed in the Confirmation Order. Absent such ruling, the Debtors may withdraw the Plan. Moreover, the Debtors reserve the right to seek a further ruling of the Bankruptcy Court at the appropriate time, if this bankruptcy case is still open, determining whether a fee would be generated and owed pursuant to 28 U.S.C. section 1930(a)(6)(B) as a result of the release of the Secured Creditors' collateral pursuant to the Retail Unit Transfer or as a result of the payment of the Balance of Payoff Amount.

12.2. ***Substantial Consummation of the Plan***.

Without limitation, upon transfer of the Residential Units to the Secured Creditors or their designee pursuant to paragraph 4.2 of the Plan, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b), if not earlier.

12.3. ***Plan Supplement***.

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

12.4. ***Exemption from Certain Transfer Taxes***.

Pursuant to Bankruptcy Code section 1146: (a) the making or delivery of any instrument of transfer in connection with or furtherance of the Plan; (b) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan; (c) the creation of any Lien, mortgage, deed of trust, or other security interest; (d) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan; and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment, and any penalties, interest, or additions to any such tax, fee, assessment or other item identified above, to the fullest extent provided by law, including, but not limited to: (i) mortgage recording taxes imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate transfer tax imposed under Article 31 of the Tax Law of the State of New York (including by reason of a change in the equity ownership of the Debtor), (iii) the New York mansion tax imposed under Section 1402-a of the Tax Law of the State of New York exempted under Section 1405 of the Tax Law of the State of New York, (iv) the New York City Real Property transfer tax imposed by title 11, chapter 21 of the New York City Administrative Code (including by reason of a change in the equity ownership of the Debtor), and (v) any similar tax on the recording of deeds, transfers of property or ownership interests in property, recording of mortgages or other security instruments imposed by the State of New York, or any political subdivision thereof. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or Governmental Unit in which any instrument hereunder is to be recorded (including, without

limitation, the Register of the City of New York) shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax. All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Project, any taxes from which the transactions effectuated pursuant to the Plan and Confirmation Order are exempt, pursuant to and in furtherance of Bankruptcy Code section 1146(a) and to the greatest extent provided by law. For the absence of doubt, all transactions under this Plan, including, without limitation, the transactions contemplated in section 5.1 of the Plan, and (a) the transfer of the Residential Units to the Secured Creditors or their designee on or after the Effective Date and any replacement mortgage on the Residential Units in connection with replacing current pledge of existing Secured Lender loans, (b) the transfer, if any, of the Retail Units to the Secured Creditors or their designee at the expiration of the Retail Closing Period and any replacement mortgage on Retail Units in connection with replacing current pledge of existing Secured Lender loans, and (c) the refinancing, if any of the Retail Units by the Debtors or their designee during the Retail Closing Period, shall be deemed made pursuant to and under the Plan and thus shall be entitled to the foregoing exemptions under section 1146(a) of the Bankruptcy Code.

12.5.    *Amendments*.

(a)    Plan Modifications. The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules and subject to the consent of the Secured Creditors, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Bankruptcy Code section 1129(b), and (ii) after entry of the Confirmation Order, in the manner provided for by Bankruptcy Code section 1127 or as otherwise permitted by law, in each case without additional disclosure pursuant to Bankruptcy Code section 1125. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

(b)    Other Amendments. Before the Effective Date, the Debtors may in consultation with the Secured Creditors make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

12.6.    ***Effectuating Documents and Further Transactions; Post-Effective Date Management***.

The Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Sheng

Zhang shall continue to serve as Chairman and Chief Executive Officer of each of the Debtors on and after the Effective Date.

12.7.  ***Revocation or Withdrawal of Plan; Reservation of Rights***.

(a)    The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

(b)    Without limitation to the reservations set forth in section 12.7(a), in the event the Plan is revoked or withdrawn and is deemed null and void, the Secured Creditors reserve all rights to object to any subsequent plan proposed by the Debtors or any other Person on any grounds and exercise any rights they otherwise have under the Bankruptcy Code or other governing law, notwithstanding any of the terms, provisions, or contents of the Plan.

12.8.  ***Severability of Plan Provisions***.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power, subject to the consent of the Secured Creditors, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or further modified without the consent of the Debtors, and (c) nonseverable from the other terms and provisions of the Plan and mutually dependent therewith.

12.9.  ***Post-Effective Date Condo Counsel***

Upon Effective Date, Debtors to provide waiver for Secured Creditors to retain Holland & Knight as condo counsel in connection with sales of the Residential Units, Condominium

operations and the Offering Plan, other than to pursue claims or causes of action against the Debtors or any affiliate of the Debtors.

12.10.  *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; provided, however, that corporate or Entity governance matters relating to the Debtors, shall be governed by the laws of the state of incorporation or organization of the Debtors.

12.11.  *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

12.12.  *Successor and Assigns*.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.13.  *Entire Agreement*.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which shall be deemed to become merged and integrated into the Plan.

12.14.  *Exhibits to Plan*.

All exhibits, schedules, supplements, and appendices to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

12.15.  *Notices*.

All notices, requests, and demands to or upon the Parties to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

Hudson 888 Owner LLC and Hudson 888 Holdco LLC
c/o XIN Development Group International, Inc.
150 East 52nd Street
New York, NY 10022
Attn:     Sheng Zhang
          James Zhu
Email:    sheng.zhang@xyreusa.com
          jzhu@xindevelopment.com

-and-

Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
Attn:     Robert D. Gordon
          Christina Ying
          Rodger Quigley
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
Email:    rgordon@herrick.com
          cying@herrick.com
          rquigley@herrick.com

If to the Secured Creditors:

DOF II-Bloom Mezz LLC and DOF II-Bloom Senior LLC
c/o BH3 Management.
819 NE 2nd Ave., Suite 500
Fort Lauderdale, FL 33304
Attn:     Zachary Bennett
Email:    zach@bh3llc.com

-and-

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Attn:     David A. Pisciotta
          Nicholas B. Vislocky
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email:    dpisciotta@reedsmith.com
          nvislocky@reedsmith.com

46

**HUDSON 888 OWNER LLC AND HUDSON 888
HOLDCO LLC, as Debtors**


By: */s/ Sheng Zhang*
Name:  Sheng Zhang
Title:  Chairman and Chief Executive Officer

**SCHEDULE 5.1(b)**

**UNSOLD RESIDENTIAL UNITS**

| Units | Tax Lot Numbers |
|---|---|
| 201 | 1406 |
| 202 | 1407 |
| 203 | 1408 |
| 205 | 1409 |
| 206 | 1410 |
| 207 | 1411 |
| 208 | 1412 |
| 210 | 1414 |
| 211 | 1415 |
| 221 | 1416 |
| 222 | 1417 |
| 226 | 1420 |
| 227 | 1421 |
| 229 | 1423 |
| 230 | 1424 |
| 302 | 1426 |
| 305 | 1428 |
| 309 | 1432 |
| 311 | 1434 |
| 322 | 1436 |
| 326 | 1439 |
| 330 | 1443 |
| 501 | 1444 |
| 502 | 1445 |
| 503 | 1446 |
| 505 | 1447 |
| 506 | 1448 |
| 508 | 1450 |
| 511 | 1452 |
| 521 | 1453 |
| 526 | 1457 |
| 530 | 1460 |
| 602 | 1462 |
| 603 | 1463 |
| 605 | 1464 |
| 606 | 1465 |
| 608 | 1467 |
| 610 | 1469 |
| 621 | 1470 |
| 625 | 1473 |
| 626 | 1474 |
| 627 | 1475 |
| 629 | 1477 |
| 701 | 1478 |
| 702 | 1479 |
| 703 | 1480 |
| 705 | 1481 |
| 706 | 1482 |
| 707 | 1483 |

| Units | Tax Lot Numbers |
|-------|-----------------|
| 725 | 1487 |
| 726 | 1488 |
| 729 | 1489 |

**EXHIBIT A**

## PERMITTED ENCUMBRANCES

1.    Building restrictions and zoning and other regulations, resolutions and ordinances and any amendments thereto now or hereafter adopted.

2.    Any state of facts which an accurate survey of the Building and the Unit would show, or such other items as a personal inspection of the Property would show, provided such facts would not make title to the Unit unmarketable, except as otherwise permitted herein.

3.    The terms, burdens, covenants, restrictions, conditions, easements and rules and regulations, all as set forth in the Declaration, the By-Laws and the Rules and Regulations, the Power of Attorney from the Grantee to the Board and other parties, and the Floor Plans; as all of the same may be amended from time to time.

4.    Consents by the Grantor or any former owner of the Land for the erection of any structure or structures on, under or above any street or streets on which the Property may abut.

5.    Any easement or right of use in favor of any utility company for construction, use, maintenance or repair of utility lines, wires, terminal boxes, mains, pipes, cables, conduits, poles and other equipment and facilities on, under and across the Property.

6.    Revocability of licenses for vault space, if any, under the sidewalks and streets.

7.    Encroachments of stoops, areas, cellar steps or doors, trim, copings, retaining walls, bay windows, balconies, sidewalk elevators, fences, fire escapes, cornices, foundations, footings and similar projections, if any, on, over, or under the Property or the streets or sidewalks abutting the Property, and the rights of governmental authorities to require the removal of any such projections and variations between record lines of the Property and retaining walls and the like, if any.

8.    Leases and service, maintenance, employment, concessionaire and license agreements, if any, of other Units or portions of the Common Elements.

9.    The lien of any unpaid Common Charge, real estate tax, water charge or sewer rent, or vault charge, provided the same are adjusted at the closing of title.

10.    The lien of any unpaid assessment payable in installments (other than assessments levied by the Board), except that the Grantor shall pay all such assessments due prior to the Closing Date (with the then current installment to be apportioned as of the Closing Date) and the Grantee shall pay all assessments due from and after the Closing Date.

11.    Any declaration or other instrument affecting the Property which the Grantor deems necessary or appropriate to comply with any Law, ordinance, regulation, zoning resolution or requirement of the Department of Buildings, the City Planning Commission, the Board of Standards and Appeals, or any other public authority, applicable to the demolition, construction, alteration, repair or restoration of the Property.

12.     Any encumbrance as to which First American Title Insurance Company (or such other New York Board of Title Underwriters member title insurance company which insures the Grantee's title to the Unit) would be willing, in a fee policy issued by it to the Grantee, to insure the Grantee that such encumbrance (1) will not be collected out of the Unit if it is a lien or (2) will not be enforced against the Unit if it is not a lien.

13.     Any other encumbrance, covenant, easement, agreement, or restriction against the Property other than a mortgage or other lien for the payment of money, which does not prevent the use of a Unit for residential purposes.

14.     Any lease covering the Unit made from the Grantor to the Grantee.

15.     Any violation against the Property (other than the Unit) which is the obligation of the Condominium Board or another Unit Owner to correct.

16.     Covenants and/or restrictions contained in an Indenture recorded on 10/09/1845 in (as) in Liber 465 Cp. 598 and repeated in an Indenture recorded on 07/18/1846 in Liber 481 Cp. 59, Indenture recorded on 09/16/1847 in Liber 496 Cp. 2, Indenture recorded on 12/28/1847 in Liber 502 Cp. 65 and Indenture recorded on 05/27/1868 in Liber 1054 Cp. 216.

17.     Covenants and restrictions contained in an Indenture recorded on 12/09/1848 in (as) Liber 511 Cp. 339.

18.     Covenants and restrictions contained in an Indenture recorded on 02/01/1853 in (as) Liber 628 Cp. 107.

19.     Covenants and restrictions contained in Deed recorded on 01/25/2016 in (as) CRFN 2016000023510.

20.     Terms, covenants, conditions and agreements contained in a Lease made by and between Hudson 888 Owner LLC, Lessor, and Target Corporation, Lessee, a memorandum of which dated 10/31/2016 was recorded on 11/18/2016 in (as) CRFN 2016000408129.

21.     Zoning Lot Certification dated 08/24/2016 recorded on 09/15/2016 in (as) CRFN 2016000322226.

22.     Zoning Lot Description and Ownership Statement made by Hudson 888 Owner LLC, dated 09/08/2016 executed by John Liang, Managing Director and recorded on 09/15/2016 in (as) CRFN 2016000322227.

23.     Consolidated mortgage contained in a Security Agreement and Fixture Filing recorded on January 27, 2021 in (as) CRFN 2021000032887.

24.     Assignment of note contained in a Memorandum of Collateral Assignment of Note, Mortgage and Other Loan Documents recorded on May 2, 2023 in (as) 2023000108516.

25.  UCC Financing Statement made by HUDSON 888 OWNER LLC, as debtor, in favor of DREG CARED LENDER LLC, as secured party, recorded on January 27, 2021 in (as) CRFN 2021000032889.

26.  UCC-3 Assignment recorded on March 15, 2021 in (as) CRFN 202100009474 made by DREG CARED LENDER LLC as secured party, assigning its rights under a recorded UCC Financing Statement in (as) CRFN 2021000032889 in favor of DREG CARED LENDER GS LLC as the new secured party.

27.  UCC-3 Assignment recorded on May 2, 2023 in (as) CRFN 2023000108515 made by DREG CARED LENDER GS LLC as secured party, assigning its rights under a recorded UCC Financing Statement in (as) CRFN 2021000032889 in favor of DOF II-BLOOM SENIOR LLC as the new secured party.

28.  Assignment of Leases and Rents made by Hudson 888 Owners LLC as borrower in favor of DREG CARED LENDER LLC as lender, recorded on January 27, 2021 in (as) CRFN 2021000032888.

29.  Assignment of Assignment of Leases and Rents recorded on January 27, 2021 in (as) CRFN 2021000032888 by Hudson 888 Owners LLC as borrower to DOF II-Bloom Senior LLC as new lender, recorded on May 2, 2023 in CRFN 2023000108514.

30.  UCC Financing Statement made by HUDSON 888 HOLDCO LLC, as debtor, in favor of CG45 FUNDING, LLC, as secured party, recorded on January 12, 2021 in the State of Delaware under Filing Number 20210310558.

31.  UCC-3 Assignment recorded on May 2, 2023 in the State of Delaware under Filing Number 20233314787 made by CG45 FUNDING, LLC as secured party, assigning its rights under a recorded UCC Financing Statement with Filing Number 20210310558 in favor of DOF II-BLOOM MEZZ LLC as the new secured party.

**EXHIBIT B**

**EXHIBIT B**

Management Terms for Condominium

1. Prior to the Residential Unit Transfer, Debtors shall be permitted to adopt board resolutions on behalf of the Condominium relating to signage and the loading dock in the form attached hereto as Exhibit B-1 to this Exhibit B.

2. **Upon the Residential Unit Transfer, and thereafter during the balance of the Retail Closing Period:**

   a. Secured Creditors (through its designee) shall:

      i. hold two of three Condominium board seats;

      ii. assume control of budgeting, and monthly operational expense funding for the entire Condominium (residential + retail), subject to the terms of the Plan and the Declaration;

      iii. not modify the Declaration, by-laws of the Condominium ("**By-Laws**") or rules and regulations of any condominium owners association formed pursuant to the Declaration ("**Rules and Regulations**"), collectively, the "**Condominium Documents**", without the reasonable approval of Debtors except as set forth below in clause (ix);

      iv. assume management of the Residential Units;

      v. have the authority to replace FirstService Residential Management as property manager only for unsatisfactory performance, provided that (i) any replacement property manager shall have experience with and shall provide management services typical for first-class mixed-use developments in the New York metropolitan area, and (ii) the replacement of the property manager shall not cause any delay in Debtors' refinancing of the Retail Units;

      vi. maintain the current insurance for the Condominium as set forth in the insurance certificate attached hereto as Exhibit B-2 to this Exhibit B;

      vii. not take any actions or omissions that would violate, or cause Debtors to violate, any terms of any existing lease for the Retail Units and not interfere with Debtors' management of the Retail Units;

      viii. cooperate with the Debtors to satisfy reasonable requests by a non-affiliated lender refinancing the Retail Units, including, without limitation, providing an estoppel certificate from the Condominium board that the holder of the Retail Units is in good standing and not in default under the Condominium Documents and otherwise in lender's standard form; and

      ix. file an amendment to the Offering Plan to disclose Secured Creditors' status as "Successor-Sponsor" with respect to the Residential Units having all rights and obligations of a Successor-Sponsor with respect to the Residential Units under the Offering Plan (the "**Successor-Sponsor**

Amendment"), which shall provide the following (collectively, the "**Joint Representations**"): (i) the Original Sponsor is retaining all obligations related to construction performed by or on behalf of the Original Sponsor; (ii) Successor-Sponsor disclaims any and all disclosures and representations made by the Original Sponsor in the Offering Plan; (iii) Successor-Sponsor disclaims any failure of the Original Sponsor to comply with the terms of the Offering Plan; (iv) Original Sponsor shall not be liable for any inaccurate or incomplete disclosure or misrepresentations made by Successor-Sponsor in any amendment to the Offering Plan; (v) Original Sponsor shall not be liable for any failure of Successor-Sponsor to comply with the terms of the Offering Plan and any amendments thereto; and (vi) Original Sponsor shall retain those certain Declarant rights as shall have been agreed to by Secured Creditors and the Debtors.

b.  The Debtors shall:

   i.  hold one of three Condominium board seats;

   ii.  maintain management of the Retail Units;

   iii.  not modify, terminate or enter into new leases for the Retail Units without the prior consent of the Secured Creditors;

   iv.  not modify the Declaration, By-Laws or Rules and Regulations;

   v.  not interfere with Secured Creditors' management, marketing and sales of the Residential Units;

   vi.  deliver to the Secured Creditors' all Condominium records in Debtors' possession without any representation or warranty and cooperate in the transition of control of the Condominium board to the Secured Creditors; and

   vii.  cooperate with Secured Creditors in filing the Successor-Sponsor Amendment as described in 2.a.ix above, including joining in the filing of the amendment solely as it relates to the Joint Representations.

**3.  Upon payment of the Balance of Payoff Amount:**

a.  Secured Creditors (through its designee) shall

   i.  hold two of three Condominium board seats for the remainder of the Initial Control Period (as defined in the Declaration);

   ii.  retain management and control of budgeting, and monthly operational expense funding for the Condominium, subject to the terms of the Declaration, for the remainder of the Initial Control Period;

   iii.  have the authority to replace the property manager for any reason, subject to the terms of the Declaration, for the remainder of the Initial Control Period, provided that any replacement property manager shall have experience with and shall provide management services typical for first-class mixed-use developments in the New York metropolitan area;

        iv.   maintain insurance coverage for the Condominium in amounts not less than those set forth in Exhibit B-2; and

        v.   not take any actions or omissions that would violate, or cause Debtors to violate, any terms of any lease for the Retail Units and not interfere with Debtors' management of the Retail Units.

    b.   Debtors, or their affiliate as the new owner of the Retail Units in connection with the refinancing of such units, shall

        i.   hold one of three Condominium board seats for the remainder of the Initial Control Period,

        ii.   maintain management of the Retail Units,

        iii.   use commercially reasonable efforts to enforce the terms of the Retail Unit leases and cause the retail tenants to comply with the terms and provisions of the Condominium Documents, and

        iv.   not interfere with Secured Creditors' management, marketing and sales of the Residential Units.

    c.   After the Initial Control Period, the control of the Condominium board shall be governed by the terms of the Declaration.

**4.  Upon the Retail Unit Transfer, if any:**

    a.   Secured Creditors (through its designees) shall

        i.   Retain full governing control of and hold all Condominium board seats on the Condominium board, and

        ii.   assume full management and control of budgeting, and monthly operational expense funding for the entire Condominium (residential + retail), and

    b.   Debtors shall retain no Condominium board seats, rights or interests in management or control of the Condominium, including both the Residential Units and Retail Units.

**EXHIBIT B-1**

**RESOLUTION OF THE CONDOMINIUM BOARD**
**OF**
**BLOOM ON FORTY FIFTH**

**WHEREAS,** pursuant to Article 2, Section 2.2.2.1(a) of the Condominium By-Laws (the "By-Laws"), the Condominium Board shall be entitled to make determinations concerning the operation, care, upkeep, maintenance, repair and replacement of the General Common Elements;

**WHEREAS,** pursuant to Article 2, Section 2.2.2.1 (o) of the By-Laws, the Condominium Board shall be entitled to obtain and review insurance for the Property;

**WHEREAS**, Target currently occupies Retail 1 at the Building;

**WHEREAS,** the Loading Dock (as hereinafter defined) is a General Common Element;

**WHEREAS**, Section 29.2 of the Condominium Declaration provides that a tenant under a Non-Residential Lease will have the rights such Non-Residential Unit Owner has under this Declaration which such Non-Residential Unit Owner has specifically granted to such tenant under its Non-Residential Lease, including, without limitation, (i) the rights to use the applicable Non-Residential Unit, the Limited Common Elements and the General Common Elements and rights to access such Common Elements, (ii) the rights to repair the Non-Residential Units and General Common Elements and Limited Common Elements, whether or not such portions of the Property or systems are utilized by other Unit Owners or the Condominium Board, and (iii) the right to install Signage on or about the Building including the exterior facade, to the extent that the Non-Residential Unit Owners have the right to install such Signage under the terms of this Declaration and the By-Laws and at all times in accordance with the tenant's rights under the Non-Residential Lease.

**WHEREAS**, the Condominium Board recognizes certain rights of Target and desires to adopt the following resolutions to reinforce those certain rights of Target under its Non-Residential Lease (the "Target Lease");

**NOW, THEREFORE**, be it resolved by the Board of Managers:

**RESOLVED**: For so long as Target is the tenant of Retail 1, the owner of the Retail 1 (the "Retail Unit 1 Owner") shall have the right to install, operate, maintain, repair and replace identification signs and backgrounds, including accent lights with power to illuminate same, in the same locations on the Building and with the minimum dimensions as they exist on the date of hereof, and otherwise of such design, content and colors as Retail Unit 1 Owner may determine from time to time in its sole discretion, but subject in all cases to the requirements of applicable Law. In connection with the foregoing signs and backgrounds, Retail Unit 1 Owner shall have an easement for access over, under, upon, through and across, and the Property shall be subject to such easement, in connection with Retail Unit 1 Owner's right to install, operate, maintain, repair and replace same in accordance with the Condominium Declaration and By-Laws. Notwithstanding the foregoing, in the event that the Retail Unit 1 Owner desires to relocate its signs to areas on the Property other than on the exterior façade of Retail 1, prior to installing

such signs, the Retail Unit 1 Owner must obtain the Condominium Board's prior written consent, which consent may not be unreasonably withheld, conditioned or delayed.

**RESOLVED FURTHER**: For so long as the Target Lease is in full force and effect, Target shall have a preferred, but non-exclusive, right to use the one (1) truck bay in the loading dock area located in the southeastern side of the Building on 44th Street (the "Loading Dock") during the hours of 6 a.m. to 10 a.m. and 5 p.m. to 11 p.m. each day for loading and unloading. In the event an occupant desires to use the Loading Dock during such times, such occupant shall coordinate with the Board and the Retail Unit 1 Owner to schedule an appointment to use the Loading Dock. Such appointment shall be subject to Target's approval. The Loading Dock must be available for the non-exclusive use of, and access by, Target and its permittees twenty-four (24) hours a day, seven (7) days a week, every day of the year, subject to closures due to Force Majeure or as required pursuant to applicable governmental requirements.

**RESOLVED FURTHER**: That the foregoing resolutions taken by the Condominium Board are consistent with past practices at Bloom at Forty Fifth, and the Condominium Board is ratifying such practices to conform with the rights of Target under the Target Lease.

[Signature Page Follows]

IN WITNESS WHEREOF, the Secretary of the Board certifies that the above resolutions are true and accurate and were authorized and approved at a meeting of the Resolution Board duly noticed and held on _____ , 2024.

BLOOM ON FORTY FIFTH

By:_____

Name:

Title: Secretary

**EXHIBIT B-2**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

THIS POLICY IS ISSUED BY THE

## GREATER MIDATLANTIC INDEMNITY COMPANY

| NAMED INSURED<br>BLOOM ON FORTY FIFTH CONDO<br>HUDSON 888 OWNER LLC | CHANGE ENDORSEMENT<br>EFFECTIVE DATE:<br>02-04-2024 | POLICY NUMBER<br>5131M30663<br>ENDORSEMENT NUMBER 002 |
|---|---|---|

| PRO-RATA 1.000 | POLICY PERIOD: FROM: 02-04-2024 |
|---|---|
| | TO: 02-04-2025 |

| COVERAGE PART INFORMATION – Coverage Parts affected by this change are indicated by ☒ below. |
|---|

|  | COMMERCIAL PROPERTY |
|---|---|
|  | COMMERCIAL GENERAL LIABILITY |
|  | COMMERCIAL CRIME AND FIDELITY |
|  | COMMERCIAL INLAND MARINE |
|  | _____ |
|  | _____ |
|  | _____ |

| CHANGE DESCRIPTION |
|---|

THE INSURED NAME HAS BEEN CHANGED

FROM: BLOOM ON FORTY FIFTH CONDO

TO: BLOOM ON FORTY FIFTH CONDO
HUDSON 888 OWNER LLC

NO CHANGE IN PROPERTY PREMIUM:

NO CHANGE IN GENERAL LIABILITY PREMIUM:

*{The following applies ONLY to change(s) applicable to premises located in the State of New York}*

*"This endorsement cannot be used to alter or re-write provisions providing coverage under your policy. This endorsement can be used only to perform administrative changes, such as adding or deleting a location, changing your address, adding, removing or changing the name and address of a Loss Payee or Mortgagee or up-dating Limits after a purchase or acquisition or disposal of property in accordance with the reporting provisions of your policy."*

| PREMIUM CHANGE |
|---|

| ADDITIONAL $ | RETURN $ |
|---|---|

GNY 031 07/10

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
9/16/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Monica Muglia |
|---|---|
| Acrisure Insurance Partners Services of NY, LLC<br>90 S. Ridge Street<br>Rye Brook, NY 10573 | PHONE (A/C, No, Ext): (845) 623-3434   FAX (A/C, No): (845) 623-4332<br>E-MAIL ADDRESS: mmuglia@acrisure.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A : Greater Mid-Atlantic Indemnity Company | 17155 |
| Bloom on Forty Fifth Condominium<br>150 E. 52nd Street, Suite 6002<br>New York, NY 10022 | INSURER B : XL Insurance America, Inc. | 24554 |
| | INSURER C : AmTrust Insurance Company | 15954 |
| | INSURER D : Travelers Casualty and Surety Company of America | 31194 |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES   CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | X | 5131M30663 | 2/4/2024 | 2/4/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY PRO-JECT X LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | 5131M30663 | 2/4/2024 | 2/4/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR | | | AUR0503370-03 | 2/4/2024 | 2/4/2025 | EACH OCCURRENCE | $ 50,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 50,000,000 |
| | DED RETENTION $ | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N | | | KWC1335857 | 11/2/2023 | 11/2/2024 | PER STATUTE OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| D | Directors & Officers | | | 107785069 | 2/4/2024 | 2/4/2025 | Limit | 1,000,000 |
| D | Employee Dishonesty | | | 107785069 | 2/4/2024 | 2/4/2025 | Limit | 500,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Sample Certificate
.
.
.
Proof of Coverage

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Sample Certificate<br>Proof of Coverage | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

**ACORD 25 (2016/03)**   © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

# ACORD®   EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 9/16/2024

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | COMPANY NAME AND ADDRESS | NAIC NO: 17155 |
|---|---|---|
| **PHONE (A/C, No, Ext):** (845) 623-3434 Acrisure Insurance Partners Services of NY, LLC 90 S. Ridge Street Rye Brook, NY 10573 Contact name: Monica Muglia | Greater Mid-Atlantic Indemnity Company 200 Madison Avenue New York, NY 10016-3904 | |
| **FAX (A/C, No):** (845) 623-4332   **E-MAIL ADDRESS:** | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH | |

| CODE:   SUB CODE: | POLICY TYPE |
|---|---|
| AGENCY CUSTOMER ID #: BLOOONF-01 | **Commercial Package** |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER 5131M30663 |
|---|---|---|
| Bloom on Forty Fifth Condominium 150 E. 52nd Street, Suite 6002 New York, NY 10022 | EFFECTIVE DATE 2/4/2024 | EXPIRATION DATE 2/4/2025   ☐ CONTINUED UNTIL TERMINATED IF CHECKED |
| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: | |

**PROPERTY INFORMATION** (ACORD 101 may be attached if more space is required)   ☒ BUILDING  OR  ☐ BUSINESS PERSONAL PROPERTY

LOCATION / DESCRIPTION
Loc # 1, Bldg # 1, 615 10th Avenue aka, New York, NY 10036, Condo Building

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**COVERAGE INFORMATION**

| PERILS INSURED | BASIC |  | BROAD |  | ☒ SPECIAL | | |
|---|---|---|---|---|---|---|---|

| COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: | $ 53,106,560 | | | DED: 25,000 |
|---|---|---|---|---|

| | YES | NO | N/A | | | |
|---|---|---|---|---|---|---|
| ☒ BUSINESS INCOME    ☐ RENTAL VALUE | X | | | If YES, LIMIT: | 4,350,000 | Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | | | X | If YES, indicate value(s) reported on property identified above: $ | | |
| TERRORISM COVERAGE | X | | | Attach Disclosure Notice / DEC | | |
|     IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | X | | | | |
|     IS DOMESTIC TERRORISM EXCLUDED? | | X | | | | |
| LIMITED FUNGUS COVERAGE | | | X | If YES, LIMIT: | | DED: |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | X | | | | |
| REPLACEMENT COST | X | | | | | |
| AGREED VALUE | X | | | | | |
| COINSURANCE | | X | | If YES, %| | |
| EQUIPMENT BREAKDOWN (If Applicable) | X | | | If YES, LIMIT: | 58,018,992 | DED: 25,000 |
| ORDINANCE OR LAW - Coverage for loss to undamaged portion of bldg | X | | | If YES, LIMIT: | 53,106,560 | DED: 25,000 |
|     - Demolition Costs | X | | | If YES, LIMIT: | 5,000,000 | DED: 25,000 |
|     - Incr. Cost of Construction | X | | | If YES, LIMIT: | 5,000,000 | DED: 25,000 |
| EARTH MOVEMENT (If Applicable) | X | | | If YES, LIMIT: | 5,000,000 | DED: 50,000 |
| FLOOD (If Applicable) | X | | | If YES, LIMIT: | 5,000,000 | DED: 100,000 |
| WIND / HAIL INCL ☒ YES ☐ NO Subject to Different Provisions: | | X | | If YES, LIMIT: | 53,106,560 | DED: 25,000 |
| NAMED STORM INCL ☒ YES ☐ NO Subject to Different Provisions: | | X | | If YES, LIMIT: | 53,106,560 | DED: 25,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | X | | | | | |

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**ADDITIONAL INTEREST**

| ☐ CONTRACT OF SALE   ☐ LENDER'S LOSS PAYABLE   ☐ LOSS PAYEE ☐ MORTGAGEE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|
| NAME AND ADDRESS     Sample Certificate of Insurance | AUTHORIZED REPRESENTATIVE   _LB_ |

**ACORD 28 (2016/03)**

© 2003-2015 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

**ACORD®**

# ADDITIONAL REMARKS SCHEDULE

Page __1__ of __1__

MBARON

| AGENCY | NAMED INSURED |
|---|---|
| **Acrisure Insurance Partners Services of NY, LLC** | **Bloom on Forty Fifth Condominium**<br>**150 E. 52nd Street, Suite 6002**<br>**New York, NY 10022** |

| POLICY NUMBER | | |
|---|---|---|
| **5131M30663** | | |

| CARRIER | NAIC CODE | |
|---|---|---|
| **Greater Mid-Atlantic Indemnity Company** | **17155** | EFFECTIVE DATE: **02/04/2024** |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER:    ACORD 28    FORM TITLE: EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

Special Conditions:
**THIS IS PROOF OF COVERAGE**
-
-
**SAMPLE EVIDENCE OF INSURANCE**

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD